### William M. Rice et al. v. John Ward et al.

#### No. 897. Decided May 7, 1900.

**1. Depositions—Use of Memoranda.**

When counsel procuring the taking of depositions furnished the notary with memoranda of the matters to which the witnesses would testify, prepared from information obtained from them in previous conversations, and used by the notary, where matters therein contained were omitted in their answers, to suggest such omission or refresh the witnesses' memory, the depositions should have been suppressed on motion. (Pp. 534-540.)

**2. Same.**

It did not devolve upon the party complaining of such practice to show that any injury resulted from the irregularity of the proceeding. But see opinion for circumstances under which it is held such injury might be inferred. (Pp. 536, 539.)

**3. Same.**

It is immaterial that the notary so acted with innocent purpose; since, by his use of such memoranda he undertook to do for the plaintiffs that which made him their representative in a sense in which he did not represent the defendants. (P. 537.)

**4. Same—Duty of Notary.**

The law makes the notary, in taking depositions, the mere instrument to record and transmit that which the witnesses may state in answer to questions which are furnished by the parties, and he has no authority to propound other questions, furnished by the parties or of his own suggestion, in order to elicit a fuller statement from the witnesses. (P. 537.)

**5. Same—Memoranda—Right to Cross-Examine.**

The use by the notary of a memorandum furnished by a party to aid the memory of a witness testifying by deposition was violative of the right of the opposite party to cross-examine the witness upon the paper used as well as on the matter called out by its use. (P. 538.)

**6.  Evidence—Witness—Character to Impeach or Sustain.**

When evidence of the character of a witness at a date remote from the trial is offered to impeach or sustain him, its admissibility is largely in the discretion of the trial judge.  (Pp. 539, 540.)

ERROR to the Court of Civil Appeals for the Third District, in an appeal from Falls County.

Ward and others sued Rice and others and had judgment, from which the defendants appealed and procured writ of error on its affirmance.

*Baker, Botts, Baker & Lovett, Finks & Gordon,* and *L. W. Goodrich,* for plaintiff in error.

*George Clark, Z. I. Harlan, Rice & Bartlett,* and *Sam R. Scott,* for defendants in error.—The court did not err in overruling the motion of the appellants to suppress the depositions of the witnesses Capps and Reed, because appellants failed to show that the answers of the witnesses could have been affected by the proceedings complained of, it being shown by appellants' own testimony that the witnesses were not allowed to see the memoranda before answering the interrogatories, nor were the contents of the memoranda furnished to either witness by the notary who took the depositions.  For aught that appears upon the record, the answers of these witnesses could not have been otherwise than they were, and appellants having failed to show that such answers were affected by the procedure complained of, their motion to suppress properly failed.  Lundy v. Pierson, 67 Texas, 233; Schunior v. Russell, 83 Texas, 89; 3 Jones on Ev., sec. 711; Commercial Bank v. Union Bank, 11 N. Y., 203; McGinley v. McLaughlin, 2 B. Mon., 302.

BROWN, ASSOCIATE JUSTICE.—On June 19, 1895, the defendants in error, the surviving wife, the heirs and devisees of S. S. Ward, deceased, filed their original petition in the District Court of Falls County against the plaintiffs in error, in which they prayed for a decree declaring a deed absolute in form to be a mortgage.  The deed was executed by S. S. Ward to Wm. M. Rice, on the 9th day of March, 1868, and conveyed the land described in the plaintiffs' petition.  The petition alleged in substance that on the date named, S. S. Ward was indebted to Wm. M. Rice & Co. in about the sum of $600, to secure which Ward conveyed the land described in the petition to the said Wm. M. Rice by the deed set up and described therein.  The plaintiffs asked that the said deed be held and declared to be a mortgage to secure the said sum of $600, and that the said Wm. M. Rice be charged with the rents of the land during the time that he had held the same, and offering to pay whatever balance there was remaining unsatisfied of the said debt. In the view that we take of the case, it is unnecessary for us to state the pleadings more in detail or to state the facts as found by the court.

The pleading alleged and the court found that the evidence established facts which prevented the running of the statute of limitations in favor of Wm. M. Rice. Upon a trial before a jury, it was found that the deed was executed to secure a debt of about $600, and that Rice was charged with a certain amount of rents, which being deducted from the $600 and interest, left due to Rice upon the debt $1045. The court gave judgment, declaring the deed to be a mortgage, adjudging that, upon the payment of the balance secured to Rice & Co., the plaintiffs in the court below should recover the land described in the petition. This judgment was affirmed by the Court of Civil Appeals.

The plaintiffs in error present objections to the judgment of the District Court, but we are of opinion that the Court of Civil Appeals properly disposed of all of them except that one which challenges the corectness of the ruling of the court in refusing to suppress the depositions of the witnesses Capps and Reed. We shall not discuss any of the assignments except that and shall make no statement of the facts except as they bear upon the question to be decided.

The plaintiffs' case depended largely upon the evidence of the witnesses Capps and Reed, who were both residents of the Indian Territory, at or near the town of Ardmore, and had resided there for a number of years. The plaintiffs filed interrogatories to the said witnesses, which were crossed, a commission issued, and the answers taken and returned, when the defendant in the court below moved the trial court to quash the depositions of both witnesses for the reason that the plaintiffs' counsel had furnished to the officer who took the deposition of each witness a written statement of what each of the said witnesses knew and would answer in reply to each of the direct and cross-interrogatories, and that the said officer had used the said memoranda in taking the deposition of each of the said witnesses. The court overruled the motion to quash, to which action the defendants reserved and took a bill of exceptions, which showed the following facts. After the direct and cross-interrogatories had been filed, S. R. Scott, an attorney at law and one of the parties to the record, procured T. J. Lee, an attorney at Waco, to go to Ardmore, in the Indian Territory, for the purpose of securing an officer to take the depositions of both of the witnesses. At Mr. Lee's request, Mr. Scott made out a memorandum in writing, which he testifies to as follows: "He wrote, to this question (indicating a particular number), the witness knows the following facts. That this was done to each direct and cross-interrogatory; and that the numbers of said memoranda corresponded with the interrogatories. That his said purpose in making the memoranda was to draw from the witness all that he knew material to plaintiffs' case. That is, in case said witness, in responding to the interrogatories, omitted to state facts which he had previously told him he knew, he wished the notary to refer to said memoranda and refresh his memory. That he never intended that the memoranda should be used as a means of leading the witness. That he did not know where the memorandum now is, and

could not find the same. That the memorandum was written at the suggestion of said Lee, who told him that he, Lee, would not remember all the facts that said witnesses knew, and said that witness had better write out the facts that said Reed and Capps knew as above indicated. That when said Reed and Capps were in Texas, in August, 1897, witness had gone over the case thoroughly with them, and was familiar with what they told him they would testify to. That witness knew what said Capps' and Reed's answers would be to the cross-interrogatories as he did to the others. * * * My understanding is that it is a common occurrence in the practice, especially in a matter of importance, when you desire interrogatories and depositions returned in proper shape, so that it will not be necessary to have them retaken, to have a memorandum in the hands of the officer taking the depositions; at least, it is not an uncommon practice."

Lee delivered the memorandum made by Scott to I. H. Sturgeon, a notary public who resided at Ardmore, in the Indian Territory, together with the commission and the interrogatories, with directions to take and return the depositions of the two witnesses. The memorandum was not returned with the depositions, and the evidence shows that it had been lost and was not produced upon the trial.

I. H. Sturgeon, the officer who took the depositions, testified in substance as follows: "That he was the notary who took and returned the depositions of said Capps and Reed on January 5, 1898. That Mr. Lee had one of the witnesses brought before him on the day that he gave him the depositions. That at the time, Mr. Lee gave him a sub-divided memorandum, which showed what was desired to be brought out in each answer to the direct and cross-interrogatories. That his idea was that the memorandum was to be used in getting the answers in good form so as to show the points desired to be brought out. That in taking said testimony, he, Sturgeon, read the interrogatories over to the witnesses and had them make their answers in full; that in some instances he used the witness' exact language; in many instances used the language of the memoranda in framing the answer as far as they would conform to the exact language of the witness in substance. That neither witness read nor heard read the contents of the memoranda or any portion thereof before he read the interrogatories to them except in a few instances, three or four, possibly five. That in such instances, the witness gave him an idea of what he wanted in his answer, but found some difficulty in expressing himself; and that after he, Sturgeon, got an idea of what the witness wanted to state, if it corresponded with the memoranda, read the memoranda to him and asked him if it was correct; and if he replied yes, that he, Sturgeon, wrote it that way; and that if the witness objected to anything, he cut it out. That possibly, in a few instances, the memoranda suggested facts to the witnesses which they had not before thought of, but to which they heartily assented. That he, Sturgeon, thinks very few, if any, of the answers of said witnesses as returned by him are exact copies of the memoranda;

that if there are any such, witness has no means of distinguishing these from those that are not. That witness' recollection was that he returned the memoranda to Mr. Lee at Waco; did not have it in his possession. That said witnesses were examined separately and apart. * * * I took the answers of the witnesses in substance. I did not add anything to their answers, nor did I leave anything out; if I did, I did not do it intentionally. I did not suggest to either of the witnesses what any of their answers should be. In some instances, the memorandum which I had suggested facts which the witness had forgotten to mention, but which he readily assented to as soon as his memory was refreshed. No effort was made upon my part to induce either of the witnesses to make any statement other than what he voluntarily made. I made no effort at any time, directly or indirectly, to influence either of said witnesses in any manner whatever. I had no interest in the matter. I always make it a custom in taking depositions to read the answers to the witnesses after I have taken them on the machine, and think I did so in this case; am not positive as to all of them. My certificates to these depositions state the true facts."

The eleventh direct interrogatory briefly recites the purposes of the suit to be to set aside a deed made by S. S. Ward to W. M. Rice, dated March 19, 1868, and to have it declared to be a mortgage to secure a debt due from the former to W. M. Rice & Co. in pursuance of a settlement entered into between Ward and F. A. Rice, acting for Rice & Co., upon which statement the following question is propounded: "Do you know anything of such a settlement and the existence of such a deed by said S. S. Ward? If you do, please give a detailed statement of your knowledge concerning said settlement and the execution of said deed, giving your means of knowledge." To this interrogatory, the witness Capps made an answer covering nearly two type-written pages, giving a minute and explicit account of the transaction inquired of. He stated all of the attending circumstances, with the embarrassment of Ward as an inducement to the settlement, and the conversations between Ward and Rice, the amount agreed upon between the parties as due from Ward to Rice & Co., and the scaling of the debt. He states the amount of money paid at the time by Ward to F. A. Rice and the character of property delivered in part payment, with the sum at which it was then estimated by the parties. He also stated that after the agreement was reached, Ward and Rice went to the office of a certain attorney in Marlin to have the papers drawn. This answer covered nearly every material fact involved in the right asserted by the plaintiffs against the defendants.

The method of taking the testimony, in the absence of the parties and their attorneys, by written interrogatories propounded to witnesses, is an innovation upon the common law, and the substantial requirements of the statute should be strictly complied with. Garner v. Cutler, 28 Texas, 182; Laird v. Ivens, 45 Texas, 621. Our statute does not prescribe qualifications for the officer before whom depositions may

be taken, but our court has established that he must be impartial between the parties, and whatever gives to his relation the character of employment by one party will disqualify the officer and subject the deposition, on proper objection, to be suppressed. Floyd v. Rice, 28 Texas, 341; Blum v. Jones, 86 Texas, 495; Testard v. Butler, 48 S. W. Rep. (C. C. A.), 753.

In this case, the defendants in error sent Lee to secure an officer to take the depositions, and he selected I. H. Sturgeon, of Ardmore; but his engagement by Lee was not to execute the commission, as required by law, by writing down the answers of the witnesses to the interrogatories propounded only, but also to see that the witnesses answered fully each direct and cross-interrogatory in accordance with the written memorandum furnished to him by Lee. It does not matter that Sturgeon acted with an innocent purpose; he undertook to do for the plaintiffs more than the law required, which made him their representative in a sense that he did not represent the defendants. In the case of Blum v. Jones, above cited, the officer who took the deposition was in the employment of one of the parties, but was under no obligation to do anything in connection with the taking and returning of the deposition; but our court held that his relation to the party disqualified him to execute the commission and the deposition was suppressed. This court said in that case: "But the duties of the officers in taking down the answers of the witness involve, in some degree, the exercise of judgment and discretion, and it must be held on general principles that they should stand impartial between the parties." The facts in this case show much stronger reasons why Sturgeon should be held disqualified than existed in that case.

Article 2284 of the Revised Statutes provides: "Upon the appearance of the witness, the officer to whom the commission is directed shall proceed to take his answers to the interrogatories." This is a specific statement of what the officer shall do, and limits his acts to the taking of the answers of the witness to the interrogatories propounded. The law makes the officer the mere instrument to record and transmit that which the witnesses may state in answer to questions which are furnished by the parties, and he has no authority to propound other questions which may be furnished by the parties or of his own suggestion, in order to elicit a fuller statement from the witnesses. Stagg v. Pomroy, 3 La. Ann., 16; Marr v. Wetzel, 3 Col., 6; Insurance Co. v. Bossiere, 9 G. & J., 157. According to Sturgeon's statement, when the witness failed to state, in reply to a question, any matter found in the written memorandum, he called attention to the omission and read the memorandum to him. The effect of such a proceeding was the same as if the attorney for the plaintiffs in that case had been present and had propounded orally additional questions to the witness in order to call out from him all that he knew upon the subject about which he was interrogated. Sturgeon did not take the answers of the witnesses to the interrogatories only, but also to questions propounded by himself.

It is true he does not say that he asked other questions, but that is necessarily implied in what he did. It was not a fair and impartial execution of the commission by Sturgeon.

The use by Sturgeon of the memorandum furnished by the plaintiffs could have had no less effect than to aid the memory of the witness by the use of matter not submitted to the defendants with the interrogatories nor returned to the court for inspection; and was violative of the well recognized right to a thorough cross-examination of the witness upon the paper used as well as on the matter called out by its use. In the case of Greening v. Keel, 84 Texas, 328, the answers of the witness had been taken upon private questions for the information of counsel in preparing their case, who afterwards filed interrogatories to the witness, which were crossed, and commission issued according to law. The answers previously taken upon private interrogatories were submitted to the witness and used by him in making his answers, and were attached to and returned with the commission. The trial court refused to suppress the deposition upon motion, and, in passing upon that question, this court said: "It was not proper for his answers to be taken under oath or otherwise, and for them, when so taken, to be used to aid or influence him when he came to give his deposition. Perfect fairness and equality is of so much importance in the act of taking depositions that such transactions must be condemned without regard to the motive or their actual effect at the time." In this case, counsel had talked to the witnesses, and, from his recollection of what they stated, made a memorandum of what each would answer to each direct and cross-interrogatory, which writing was used by the officer in preparing the answers to the interrogatories. The language used by Judge Henry, above quoted, applies with greater force to this case; such memorandum should not be used under any circumstances.

If we consider the written statement as a memorandum to be used by each witness to refresh his memory, it is equally obnoxious to the rules of law that govern such proceedings, because (1) it was not written at or near the time of the transaction, but nearly thirty years afterwards; (2) it was not made by the witness himself nor by any person under his direction at or near the time of the transaction, but was prepared by one of the parties of his own volition, not even in the presence of the witness. 3 Taylor, Evidence, art. 1407; Id., 9787; Watson v. Miller Bros., 82 Texas, 285. In Watson v. Miller Bros., the witness, from original papers, dictated a statement to one of the attorneys in the case, who wrote it down; when it was proposed that the witness should refer to it to refresh his recollection, the trial court sustained an objection, which was approved by this court. The memorandum is more objectionable in this case, because the statement here used was not made at the suggestion of the witness, but was the recollections of counsel of a previous statement made by the same witness not then reduced to writing. If Capps or Reed had been upon the stand testifying, he could not have used this memorandum to refresh his

memory, and the reason for excluding it is much stronger when the evidence is given by deposition, because the opposite party has neither opportunity to examine the paper referred to nor to cross-examine the witness in relation to it.

The defendants in error claim that it devolved upon the plaintiffs in error to show that some injury resulted from the irregularities of this proceeding, but we are of opinion that under no circumstances could such a proceeding as this be tolerated without regard to the question of the effect that it may have had. It it a different case from Schunior v. Russell, 83 Texas, 90, in which Judge Gaines said: "The facts repel every inference of fraud and show that no possible actual injury has occurred to the defendants from the language in which the deposition was taken. In so clear a case, we think it was not error to refuse to suppress the deposition on that ground."

After a careful examination of the answer of the witness Capps to the eleventh interrogatory, we can not say that it does not appear that the memorandum was used to the detriment of the opposite party. Sturgeon testifies that in four, perhaps five, instances he used it to call attention to matter which had been omitted, and in some instances he used its exact language in recording the answers of the witness, but he does not designate which of the answers were so written. Considering the general terms of the eleventh question propounded and the detailed statement of facts in the answer to it, in connection with their orderly arrangement and comprehensive scope, it is a reasonable inference that this is one of the instances in which the language of the memorandum played a conspicuous part in producing and giving form to the answers of the witness Capps.

S. R. Scott and Sturgeon each testified frankly as to what he did, disclaiming any intention to influence the witnesses, and we do not intend to impugn their motives; but, of the practice, we feel constrained to say that such a memorandum furnished to an officer charged with the duty of taking depositions to written interrogatories, in the absence of the opposite party, can not serve any legitimate and proper purpose connected with the performance of his duty. No sound reason occurs to us why the officer should know what a witness will testify in reply to interrogatories; in fact, it is more consistent with the spirit of the law that he should be ignorant of such facts; he should abstain, at least, from using such information. Such practice would open wide the door to fraud and undue influence in the production of testimony before the courts and would tap a source of corruption for judicial proceedings so vicious in itself that it must, without regard to the question of motive, receive the unqualified condemnation of the courts. The court erred in not sustaining the motion to suppress the deposition.

When evidence of the character of a witness at a date remote from the trial is offered to impeach or sustain him, its admissibility is largely in the discretion of the trial judge. In the case of Brown v. Perez, 89 Texas, 289, upon a similar question, this court, speaking of the dis-

cretion of the trial judge, said: "It must, however, in the nature of things, be largely left to his discretion in view of the fact that he can better understand the circumstances surrounding the trial than an appellate court can upon an examination of the record, and his ruling should not be revised, except where the circumstances clearly show that the discretion allowed has been improperly exercised." We can not say the trial court abused its discretion by admitting the evidence to sustain the witness Capps.

For the error of overruling the motion to suppress the depositions of the witnesses Capps and Reed, the judgments of the District Court and of the Court of Civil Appeals are reversed and this cause is remanded.

*Reversed and remanded.*