### ALEX PATTERSON v. STATE.

No. 1041.   Decided October 18, 1911.

Rehearing denied November 15, 1911.

**1.—Rape—Sufficiency of the Evidence—Indictment—Name of Defendant.**

Where, upon trial of rape, the defendant suggested that his given name was Alex, whereupon the court made the order of the change of name, but the clerk entered the same by writing Alexander instead of Alex, and after conviction and notice of appeal, on motion of the district attorney, the court had the order so changed as to substitute Alex for Alexander, there was no reversible error, as the names are synonymous, although it may have been improper to have made the last order after notice of appeal.

**2.—Same—Charge of Court—Requested Charges—Force.**

Where, upon trial of rape, the court submitted a proper charge on the question of force and resistance and also submitted special charges thereon, there was no reversible error in refusing additional requested charges on this phase of the case which were on the weight of the evidence.

**3.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of rape, the bill of exceptions did not set out the proceedings and attendant circumstances connected with the rejected evidence, as to the declaration of prosecutrix, the same could not be considered. Following Hunter v. State, 59 Texas Crim. Rep., 439, and other cases.

**4.—Same—Evidence—Stenographer—Reproduction of Testimony.**

Where, upon appeal from a conviction of rape, the court permitted a State's witness to testify to the evidence given by the defendant on a former trial, although the official stenographer who had taken down this testimony during said former trial was present in court, there was no reversible error, as this testimony could be reproduced by any one who heard it.

**5.—Same—Misconduct of Jury—Affidavit of Juror—Bill of Exceptions.**

Where, upon appeal from a conviction of rape, there was no bill of exceptions to the action of the court in excluding certain testimony as to the misconduct of the jury in receiving testimony outside of the record, the same could not be considered; besides, the affidavit of the juror impeaching his verdict should not have been permitted. Moreover, the judge having heard testimony and overruled the motion for new trial, there was no reversible error.

**6.—Same—Affidavit—Defendant's Attorney.**

If it be true that the affidavit of the juror was made before the attorney by the defendant, the same would not constitute a legal affidavit. Following Maples v. State, 60 Texas Crim. Rep., 169.

**7.—Same—Statement of Facts.**

The statement of facts of the testimony on motion for new trial on the misconduct of the jury, can not be filed after adjournment of the court, as other statement of facts. Following Probest v. State, 60 Texas Crim. Rep., 608.

Appeal from the District Court of Fannin. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of rape; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Hous Lee and Taylor & Lipscomb,* attorneys for appellant.—On the question that the stenographer's notes would be the best evidence: Smith v. State, 131 S. W. Rep., 1081, and cases cited in opinion.

On motion to quash indictment: Henry v. State, 42 S. W. Rep., 559; Clark v. State, 76 S. W. Rep., 573; Boren v. State, 32 Texas Crim. Rep., 637.

On question of permitting changing of name in indictment after notice of appeal: Hinman v. State, 54 Texas Crim. Rep., 434, 113 S. W. Rep., 280; Nichols v. State, 55 Texas Crim., 211, 115 S. W. Rep., 1196; Quarles v. State, 39 S. W. Rep., 669; Bundick v. State, 59 Texas Crim. Rep., 9, 127 S. W. Rep., 543.

On question of misconduct of jury: Maples v. State, 60 Texas Crim. Rep., 169, 131 S. W. Rep., 567; Ysaguirre v. State, 58 S. W. Rep., 1005; Darter v. State, 44 S. W. Rep., 850; Mitchel v. State, 36 S. W. Rep., 456; Riley v. State, 81 S. W. Rep., 711.

Upon question of insufficiency of evidence: Perez v. State, 87 S. W. Rep., 350, 48 Texas Crim. Rep., 225, 94 S. W. Rep., 1036; Tyler v. State, 79 S. W. Rep., 558; Price v. State, 35 S. W. Rep., 988; Edmondson v. State, 44 S. W. Rep., 154; Rushing v. State, 80 S. W. Rep., 527.

On rehearing, appellant's counsel contended that they did not offer to impeach the verdict of the jury, but to show the misconduct of the jury, and cited article 817, Code Criminal Procedure, and article 1371, Revised Civil Statutes as amended, and article 1371, Revised Civil Statutes, and the following cases: Anschicks v. State, 6 Texas Crim. App., 524; McKissick v. State., 26 Texas Crim. App., 673; Lucus v. State, 27 Texas Crim. App., 322; Hunter v. State, 8 Texas Crim. App., 76; Mason v. State, 16 S. W. Rep., 766; Mitchel v. State, 36 Texas Crim. Rep., 278; Kannmasher v. State, 101 S. W. Rep., 238.

*C. E. Lane,* Assistant Attorney-General, for the State.

*R. L. Lattimore,* District Attorney, and *McGrady & McMahon,* also for the State.—Upon question of misconduct of jury: Hodges v. State, 6 Texas Crim. App., 615; Mitchel v. State, 36 Texas Crim. Rep., 278; Tate v. State, 38 Texas Crim. Rep., 261; Smith v. State, 52 Texas

Crim. Rep., 344; Arnwine v. State, 54 Texas Crim. Rep., 213; Oats
v. State, 56 Texas Crim. Rep., 571.

PRENDERGAST, JUDGE.—At the August term of the District
Court of Fannin County, the appellant was indicted for rape upon
Georgia Green by force, threats and fraud. He was tried on Septem-
ber 9, 1910, convicted and given a term of ten years confinement in
the penitentiary.

We deem it unnecessary to recite at any length the testimony in
this case. There were some contradictions of the State's testimony,
some impeachment of some of the witnesses, and more or less support-
ing testimony and circumstances of the State witnesses. The appellant
admitted having intercourse with the alleged injured party, but testi-
fied and claimed that it was done with her consent, that she made
no resistance, and that it was in accordance with a previous agreement
between them. All of these matters were for the jury and the lower
court. From the testimony, which the jury was fully authorized to
believe and doubtless did believe, we, however, make this brief state-
ment of the testimony.

Georgia Green, the raped person, and her husband, lived about three
miles from the appellant. They were all negroes. A son of the appel-
lant on or about June 1, 1909, the time of the rape, a lad not grown,
ran away from his father. The appellant hunted for him some during
that day. On the night of the rape, perhaps about midnight or a lit-
tle earlier, the appellant went to the house of Green and his wife and
called Green, the husband, out. The family had gone to bed and were
asleep. Upon Green, the husband, coming out into the hall of his
house the appellant told him about his boy having run away, and
wanted to know of Green if he would not go that night to the con-
stable and get the constable to catch his boy and prevent his leaving
the county on the train. After some negotiations and hesitancy, Green
agreed to do so and did do so, leaving some half hour after appellant
first went to his house and woke him up. The appellant told Green
as a reason why he did not go himself instead of getting Green to go
was that he was sick and not able to go, and had been riding all that
night, and had a rising on him and could not ride any longer. The
appellant was not sick, was in fact able to go himself, and had no
boils on him. He made these representations to Green to induce Green
to leave his house so that he could, after Green got away, have inter-
course with his, Green's wife. As Green left as the messenger of the
appellant, the appellant at the same time left Green's house, they
going in opposite directions, the appellant towards his own home, and
Green towards the constable's. Some time after Green had gone, the
woman stating it was about two hours, and the appellant himself stat-
ing it was twenty or thirty minutes, the appellant returned to Green's
house, went up to the house, and called the woman. She was then in
bed with her children. She then had six young children, the oldest

about eight years old, and the youngest an infant about nine months old. When the appellant called her she got up from the bed, went to the door, it being fastened on the inside with a latch, raised the latch and partially opened the door. The appellant then asked her if her huband had returned. She replied that he had not, that he had not had time. By this time the appellant was at the door himself. The Green house had four rooms to it, three in a row on the west side, including a kitchen and dining room on the ell and the main room where the woman and two of her children were sleeping. No one was in the room on the east side, but there was a bed therein. The woman was a small, sickly woman, and weighed only about ninety-five to ninety-eight pounds; was subject to asthma, and was somewhat sick and suffering from it that night. Appellant was a large, heavy, robust man weighing about 200 pounds. When appellant got to the door and got in it he asked the woman if she would not be his friend and let him have intercourse with her. She refused and protested that she would not do a thing of that kind. All of her children were asleep, and had not awakened either then or at the time the appellant first came and got her husband to go and see the constable. The appellant grasped the woman at the bed, lifted her off of the floor, she protesting and calling to her oldest child, "Sister, Sister," and continued calling in this way across the hall, and after the appellant had gotten her into the east room and closed the door. As he carried her out of the room where she had been sleeping, he closed that door. The woman called and holloed and fought the appellant and resisted him continuously from the time he first picked her up until after he had accomplished his purpose and satisfied his lust. When he first took her into the east room he put her on the bed, got on her and attempted to accomplish his purpose then. The slats of the bed, however, fell and he got up from there with her, attempted to force her across his lap while he sat on the edge of a trunk, and failing to accomplish his purpose there, put his arm around her, forced her limbs apart and accomplished his purpose as stated above. She fought him and protested and cried, and resisted, and called during all of the time and until she was completely exhausted. After accomplishing his purpose he left Green's. The woman thereupon dressed, woke up some of her children, and took her little boy about daylight with her down the road for the purpose of meeting and telling her husband. The husband finally returning home met her where she was waiting for him about a half-mile from his home. She then and there told him what the appellant had done and the circumstances attending the matter. Her husband was afraid of appellant and was a coward. However, he went within a day or two or a few days, perhaps the same day, to some of the white people of the neighborhood and told them of the circumstances. The woman wanted to proceed at once, and have the appellant arrested, but some of the white neighbors, among them the

deputy sheriff, advised them not to do this but to await the convening of the grand jury at the next term of court and present the matter to the grand jury. However, it seems to have been talked about in the neighborhood and told by the woman and her husband to such an extent that some ten days or two weeks after the rape the woman filed a complaint before the justice of the peace, who had the appellant arrested, and made an investigation of the case. An examining trial was held and the testimony of the witnesses then taken down. After the appellant was indicted and about a year before his last trial and conviction, he was tried in the District Court, with what result the record does not disclose. It is unnecessary for us to go through the details of the testimony of how the appellant attempted to force sexual intercourse with the woman, but repeated efforts were made and various positions were assumed at the time before he accomplished his purpose.

A motion was made by the appellant to quash the indictment on the grounds: First, it does not appear from the face of the indictment that an offence against the law had been committed by the defendant; Second, said indictment, since it was found by a grand jury and presented and filed in court, has been, over the objection of the defendant, changed, altered and marred; Third, because said indictment as it now stands is not the action of the grand jury, and Fourth, because the same contains no accusation of any grand jury charging that this defendant committed any offense against the laws of the State.

The indictment, as shown by the record, is of the approved forms universally held sufficient by this court and follows the statute. After the necessary preliminary allegations as to the grand jury, county, etc., it charges "that Alex Patterson, heretofore, viz.: On or about the 2nd day of June in the year of our Lord One Thousand Nine Hundred and Nine (1909), in the County of Fannin, State of Texas, did then and there unlawfully make an assault in and upon Georgia Green, a woman, and did then and there, by force, threats and fraud, violently ravish and have carnal knowledge of her the said Georgia Green, without her consent, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

In this same connection we will consider appellant's bill of exception No. 12, which shows "that at the August term of the District Court there was entered in the minutes of the court an order in this cause dated September 17, 1909, which recited that the State appeared by her district attorney and the defendant appeared in person and by his attorney, and thereupon the defendant by counsel suggested in open court that he bore a different name from that stated in the indictment, and that his true name is Alexander Patterson; that the style of this cause be changed. That the style of the case was thereupon ordered changed by the court so as to give his true name, and that the cause proceed as if the true name Alexander Patterson had been first recited

in the indictment." The order further recites that at the same term of the court on that same day the defendant appeared in court in person and by counsel and presented in writing a motion for a first continuance, signed in person by him, wherein he alleged "That the defendant is not named E. Patterson, but is named Alex Patterson," that his true name was Alex. Patterson and not E. Patterson as indicted. Thereupon the court asked the defendant in person if his true name was Alex Patterson and not E. Patterson, to which he replied, yes. ' The court thereupon made the order and entered it upon the trial docket in this cause ordering defendant's name to be changed from E. Patterson to Alex Patterson in the indictment, and the style of the case to be so changed, and these changes were then and there had and done. At the August term, 1910, after the defendant had been convicted and moved for a new trial, and after his motion for a new trial was overruled, and defendant had excepted and given notice of appeal to the Court of Criminal Appeals of Texas, on motion of the district attorney, the judge made and caused to be entered in the minutes of the court, another order dated September 21, 1910, wherein was recited substantially all of the preceding statement of facts, and the order then entered changed the name of the appellant from E. Patterson to Alex Patterson. The appellant at the time of this last order objected thereto "because the court had no authority to now correct the record made out at a former trial, and because the defendant had theretofore been tried upon the indictment with the name Alex Patterson inserted therein with no order of the court authorizing any such name to be placed in the indictment; that the correction comes too late to be placed in the indictment; that the court can not amend its records so as to make legal a proceeding that is not legal, and because. the defendant had entered his notice of appeal to the Court of Criminal Appeals, and perfected his appeal to said Court of Criminal Appeals, and that the District Court had no further jurisdiction of the defendant or the record in this cause." The court overruled these exceptions, and in allowing this bill, which recites all of these matters, made the following explanation: "That when the defendant filed his application for a continuance at August term, 1909, he had the allegation in his petition that his true name was not E. Patterson, but Alex Patterson, and I then turned to defendant and asked him what his true name was and he said Alex Patterson, and the order was then made and changed in the indictment to Alex Patterson, but the clerk in writing the order made it Alexander instead of Alex, which of course is the abbreviated name for Alexander. The change was made simply from the suggestion made by the defendant that his true name was Alex and not E. Patterson. There was no bill of exceptions presented to me about the matter until this one, which is one year after the transaction occurred."

From this it will be seen that the indictment originally returned

against appellant charged his name to be E. Patterson. That a year before this cause was tried, upon the appellant's suggestion that his name was not E. Patterson but Alex Patterson, the court thereupon made an order directing that the indictment should be changed from E. to Alex, which was then done, and that the cause should thereafter proceed in the name of Alex Patterson instead of E. Patterson, which was done, to all of which at the time no bill of exceptions was taken by the appellant. That at that time when the clerk entered up the order in the minutes, instead of making the name Alex, wrote it in the minutes Alexander. This appears not to have been discovered until more than a year later, and not until after the appellant was tried, convicted, and his motion for a new trial and notice of appeal given. It is judicially known to this court that Alex is a contraction of the name Alexander. While it may be true that it was improper for the court, after the trial of this cause and notice of appeal given, to then enter the order changing the name in the order from Alexander to Alex, under the circumstances, and taking all the facts as stated as true, it is not possible that the appellant has suffered any injury whatever that should or could result in the reversal of his cause on that account.

Complaint is next made by appellant that the court erred in refusing to give three special charges requested by him. In order to state this matter properly we will give the court's charge on the subject, and the special charges requested and given, and then those that were refused. All of these charges are on the subject of the consent of the woman to the sexual intercourse with the appellant, and the extent of her resistance and alarm.

The court in his main charge stated the case, and that the appellant plead not guilty, and correctly defined the offense of rape as defined by the statute, and then defined force as follows:

"By force, as the word is used in this charge, is meant unlawful violence done by one person to another, with intent to injure such other person, and in order to support a charge of rape, the force used must have been such that it might reasonably be supposed sufficient to overcome all resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

Then after defining other terms or words, submitted to the jury the case as follows: "Now, if you believe from the evidence beyond a reasonable doubt, that the defendant, Alex Patterson, did, in the County of Fannin, State of Texas, within one year next before the 24th day of August, 1909 (which is the date of the filing of the indictment), by means of force sufficient to support the charge of rape (as the same is hereinbefore explained), ravish and penetrate Georgia Green, and thus obtain carnal knowledge of her, and that the said Georgia Green did not consent to the defendant having such carnal knowledge and that the said Georgia Green was then and there a

woman and that the defendant was then and there an adult male person, then you will find the defendant guilty as charged in the indictment and assess his punishment at death or at confinement in the State penitentiary for life or for any term of years not less than five, according to your discretion, but unless you do so believe, you will acquit the defendant.

"If you should believe from the evidence that the defendant had carnal knowledge of Georgia Green, yet if you should further believe that she consented thereto, or if you have a reasonable doubt as to whether she consented thereto or not, you must acquit the defendant."

In addition to this charge of the court, the court then gave at the appellant's instance the following two charges: 1. "The burden of proof is on the State to show, beyond a reasonable doubt, that the prosecutrix, Georgia Green, used every means and exertion within her power, under the circumstances, to prevent intercourse, if any, with the defendant; something more must be shown than the mere want of consent on the part of Georgia Green to the intercourse, if any, with the defendant; and if the evidence in this case upon this subject is such as to raise a reasonable doubt as to whether or not the said Georgia Green used every means of resistance and exertion in her power to prevent the intercourse, if any, with the defendant, you will give the defendant the benefit of such doubt, and acquit him."

2. "I charge you that the burden of proof is upon the State in this case and that it never shifts from the State to the defendant, but remains upon the State throughout the trial of the case, and that the State must show, beyond a reasonable doubt, that every material allegation in the indictment is true, that is, that the defendant in this case raped Georgia Green and that without and against her consent."

The three separate special charges requested by appellant which were refused by the court are as follows: 1. "You are instructed that if you find from the evidence that defendant had carnal intercourse with the woman, Georgia Green, then consent on her part to such carnal intercourse would be presumed until the State proves beyond a reasonable doubt, that said prosecutrix, Georgia Green, used every means within her power to prevent such intercourse.

2. "The formal statement of the prosecutrix, that she did not consent will not be the criterion, although some force be used, but the jury is to take into consideration all the evidence in the case, and if you believe from the evidence that the prosecutrix, Georgia Green, did not put forth every effort in her power, under the circumstances, to resist the intercourse with the defendant, if any, or if you have a reasonable doubt thereof, you will acquit the defendant.

3. "You are further charged that mere copulation, coupled with passive acquiescence, can never be rape. Now, if you believe from the evidence in this case, that Georgia Green consented, though unwillingly, to have intercourse with the defendant, or if you have a reasonable

doubt thereof, you will acquit the defendant and say by your verdict not guilty."

The first two of these special refused charges are clearly on the weight of the testimony. The court has no more right to charge on the weight of the testimony against the State than it has against the defendant. The statute prohibits a charge on this subject which would apply to a charge against the State as well as one in favor of or against the appellant. Whatever was proper in any of these three respective refused charges was substantially and fully covered by the main charge of the court given and those of the special charges requested by appellant which were given. So that there was no error in the court refusing to give the said three special requested refused charges.

Appellant's bill of exception No. 7 shows the following: "Upon the trial of this cause the witness, Chap Roberts, testified that 'in a conversation, the injured party, Georgia Green, stated to him that the defendant had always been a good friend to her and helped her and helped them.' The said witness, Chap Roberts, being upon the stand, defendant proposed to prove by him the following facts, which, if permitted to do so, the witness would have testified to, to wit: 'That the conversation had between witness and Georgia Green was on the subject of sexual intercourse between men and women, and that they talked about various men living in adultery with various women, in connection with the remark about her friendship with Alex Patterson.' The defendant's object and purpose in proposing to introduce said testimony, was to show and explain the meaning of the statement of prosecutrix relative to her friendship with defendant; to show the lewd character of the prosecutrix, the lewdness of her mind, and the fact that she is not such a woman as would be likely to be virtuous; and to be considered by the jury for what it was worth to show that in fact prosecutrix was not raped.

"And the State, by her prosecuting officer, objected to said testimony upon the following grounds, to wit: 'Because said testimony is irrelevant, immaterial and hearsay, and asks for a general statement the State is not bound by and you can not impeach a witness on an immaterial matter, and because asks for a conclusion,' which objections were sustained by the court and the defendant was not permitted to prove the facts above stated by this said witness, to which action and ruling of the court, in excluding said evidence from the jury, defendant then and there by counsel excepted and now tenders this his bill of exceptions to said action and asks that it be allowed, signed and filed as a part of the record in this case, which is accordingly done."

We have copied this bill in full except the style of the case and the court in which it was pending, and the signature of the judge thereto. The decisions of this court and the uniform practice has been at all times that inferences will not be indulged to supply omissions in bill of

exception. Parties asserting the availability of supposed errors must make their bills of exception so full and certain in statement that in and of itself it will disclose all that is necessary to manifest the supposed error. Davis v. State, 14 Texas Crim. App., 645; Eldridge v. State, 12 Texas Crim. App., 208; McGlasson v. State, 38 Texas Crim. Rep., 351. A bill of exceptions to be considered must sufficiently set out the proceedings and the attendant circumstances to enable the court to know certainly that an error has been committed. Thompson v. State, 29 Texas Crim. App., 208; Livar v. State, 26 Texas Crim. App., 115; Ballinger v. State, 11 Texas Crim. App., 323; McGlasson v. State, supra. The error complained of must be made to appear by the allegations of the bill itself. And when too indefinite to point out distinctly an error, it will not bring such matter properly before the appellate court for review. A bill of exceptions can not be aided by the statement of facts. Quintana v. State, 29 Texas Crim. App., 401; Walker v. State, 19 Texas Crim. App., 176; Hooper v. State, 29 Texas Crim. App., 614; Hennessey v. State, 23 Texas Crim. App., 340; Rahm v. State, 30 Texas Crim. App., 310; Wilkerson v. State, 31 Texas Crim. Rep., 86; Walker v. State, 33 Texas Crim. Rep., 359; Yungman v. State, 35 Texas Crim. Rep., 80; Mootry v. State, 35 Texas Crim. Rep., 450; Gonzales v. State, 32 Texas Crim. Rep., 611; Attaway v. State, 31 Texas Crim. Rep., 475. A bill of exception can not be aided by reference to the statement of facts or any other part of the record. It must be complete and full within and of itself. Hunter v. State, 59 Texas Crim. Rep., 439; Douglas v. State, 58 Texas Crim. Rep., 122, and cases therein cited. Any number of cases by this court could be cited to establish each and all of these propositions, but we deem it unnecessary. A part of the earlier cases are collated and given in White's Annotated Code of Criminal Procedure under section 1123, p. 732 to 735, inclusive, and White's Penal Code, section 857. All of the later cases follow and in every way fully confirm all of the earlier decisions.

It will be seen by this bill that from it this court could not tell the attitude of the case as it does not set out the proceedings and attendant circumstances of the case so as to enable the court to know certainly that an error has been committed. No time is shown as to when the claimed conversation was had by the prosecuting witness with Chap Roberts, nor the circumstances of the conversation or purported partial conversation, nor is the conversation itself purported to be given or proven by this witness. The bill is wholly insufficient to require this court to pass upon it. Even from the meager information given in the bill, we believe no error was committed in excluding the testimony.

By appellant's bill No. 3, it is shown that at a former term of the court the defendant was tried for the same offense under the same indictment, and testified in his own behalf; that the same stenographer

that took down and transcribed the testimony on the former trial is now, and has been ever since said former trial, the official court stenographer of the court and was present in the court room and acting as official stenographer at this trial; that on the trial of this case the State witness, R. L. Lattimore, was permitted, over the objection of defendant, to testify as follows:

"I am district attorney of this district. I was present about a year ago when the defendant was tried on this same charge and heard him testify. He said then that he was at Georgia Green's house the night of the alleged rape. On cross-examination he admitted that his purpose in going to Green's house that night was to practice a ruse upon Green. I remember asking him the question distinctly if it was not his purpose to go there and practice this ruse upon the husband of the wife Georgia Green in order to get him away so that he could go and have intercourse with his wife. He admitted that he had sexual intercourse with Georgia Green that night."

The appellant, at the time, objected "because the record of the official stenographer is the best evidence; that said testimony by the witness Lattimore is secondary, and an unjust reference to the former trial of the case, and injurious to the rights of the defendant and calculated to prejudice the jury against him, and is the conclusion of the witness and not the testimony as given by the defendant." The court overruled the objections and permitted the testimony. In allowing the bill qualified it as follows: "With the explanation that the court will see that the defendant himself, while on the stand, testified substantially to the very same facts that Mr. Lattimore did."

"The former evidence of a witness may be established by the testimony of any person who can swear to it from memory, including a committing magistrate, the stenographer, the county clerk, or a juryman." 16 Cyc., 1110; Black v. State, 1 Texas Crim. App., 368; Sullivan v. State, 6 Texas Crim. App., 319. It is needless to multiply authorities on this question. It has been the uniform practice of all the courts, both civil and criminal, in this State to permit, when proper, the testimony of a party given on a former trial to be proven by anybody who heard his testimony and can undertake to reproduce it.

The appellant in his brief cites us to the case of Turner v. Railroad Co., 120 S. W. Rep., 128, and Estes v. Railroad Co., 85 S. W. Rep., 909, both Missouri cases. It seems from these cases that the courts of Missouri held that the stenographer's report of the testimony on a former trial, or he as a witness, is the best evidence, and that the testimony of any other is secondary and inadmissible. We do not know what the stenographers' statute of Missouri is. Evidently to justify any such holding by that court there must be some statutory provision on the subject making such evidence the best. There is no such provision in our statutes on the subject of court stenographers' reports of the testimony, and while it occurs to us that such testimony from

the stenographer or his report thereof might be more satisfactory and certain, that does not exclude the testimony of any other person who qualifies to show that he heard and knows what a party testified on a previous trial. An objection of this kind would apply not to the admissibility of the evidence, but to the weight to be given to the testimony, which is for the jury exclusively and not for the court. The court did not err in permitting this testimony by the witness Lattimore.

The fifth ground of the motion for new trial complains "that after the jury retired and before they agreed upon a verdict, the jury received further testimony in that some of the jurors in the jury room testified as to the character of the prosecutrix and the State witness, Dennis Pollard, and used other argument and testimony as shown by the affidavit of the juror, S. B. Scott, attached to and made a part of the motion, and as shown by the testimony of the juror which defendant requested to introduce in support of the motion."

The sixth ground of the motion for a new trial complains of the misconduct of the jury, "in that the defendant being a negro, the verdict was arrived at and agreed to after the jurors had discussed and argued the fact that the jury should make an example out of defendant and convict him in this case, and that by doing so the negroes would not be so apt to commit rape in the future; and in that they used all the statements, argument and talk and received the new testimony as set out in the affidavit of the juror, S. B. Scott, attached to and made a part of the motion; and that said jurors further were guilty of misconduct in that they stated, talked and argued in the jury room, before a verdict was agreed to, that they would not get any pay if they had to stay over Sunday, that they would jump out of the window before they would stay; that they used these facts and arguments to induce the other jurors to convict defendant."

We have given a full statement of these two grounds of the motion for a new trial. The appellant swore to the motion for a new trial before R. T. Lipscomb, one of his attorneys, who was a notary public for Fannin County, Texas. To this motion there is apparently attached an affidavit by said Scott which was also sworn to before appellant's attorney, Mr. Lipscomb. The substance of this affidavit by Scott is "that after the jury retired and were considering their verdict some of the jurors spoke of the fact and talked of the fact that defendant had served one term in the penitentiary; that some of the jurors were not for conviction at first, and he was one of these; that some of the jurors said it would be right and that they should make an example of this negro and convict him, and that if they convicted defendant the other negroes would not be so apt to commit rape. That the other jurors argued the fact that the judge of the court would go to his home early on Sunday morning and that they would have to stay over all day Sunday and until Monday morning, if a verdict was not reached before 12 o'clock Saturday night; that they did not want to

have to stay over Sunday, and said jurors urged affiant to render a verdict before 12 o'clock against defendant. That somewhere between 11 and 12 o'clock at night the verdict was arrived at and that before the juror could walk home, he living in the town of Bonham, the town clock struck 12. That the jury retired to consider their verdict after 6 o'clock on Saturday evening; that some of the jurors talked of the fact that the father of Georgia Green, Dennis Pollard, was known to juror to be one of the best negroes in Fannin County, and that the prosecutrix was a daughter of the said Dennis Pollard; that one of the jurors said that the witness Dennis Pollard stated that the prosecutrix was of good character, and that he, the juror, had known Dennis Pollard for a long time and knew him to be a good man; that the judge told the jury if they could reach a verdict before 12 o'clock he would come over and receive the verdict."

None of these matters are shown by any bill of exceptions. That is the only proper way in which they can be shown to this court, and not being so shown there is nothing for this court to consider on the subject.

In the case of Bacon v. State, 61 Texas Crim. Rep., 206, 134 S. W. Rep., 691, in considering an affidavit in that case somewhat of the same nature as the above affidavit in this case, this court said: "Article 817 of the Code of Criminal Procedure provides that new trials in felony cases shall be granted for the following causes, and for no other (subdivision 8) : 'Where from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial, and it shall be competent to prove such misconduct by the voluntary affidavit of a juror.' The rule is well established that no affidavit, deposition, or other sworn statement of a juror will be received to impeach a verdict, or to explain it, or to show on what grounds it was rendered. Weatherford v. State, 31 Texas Crim. Rep., 530, 21 S. W. Rep., 251, 37 Am. St. Rep., 828. In Pilot v. State, 38 Texas Crim. Rep., 515, 43 S. W. Rep., 112, the court held it was not error to refuse to set aside a verdict upon the affidavit of a juror that he had been coerced through fear to assent to it. Nor will a verdict be set aside on account of the affidavit of a juror that he was induced to sign the verdict by a promise that the jury would recommend the defendant to executive clemency. Henry v. State, 43 S. W. Rep., 340; Montgomery v. State, 13 Texas Crim. App., 74. In the case of Johnson v. State, 27 Texas, 758, the Supreme Court said: 'No case has yet occurred in this State wherein courts have tolerated such affidavits to impeach verdicts. If ever admissible, they can only be allowed in an extreme case, and under imperative necessity for the accomplishment of justice. The rule rests upon the obvious ground that, were it otherwise, few verdicts would escape attack from jurors under influences that would be brought to bear upon them after their discharge by the court.' This was emphasized and reiterated by this court in the case of McCane v. State, 33

Texas Crim. Rep., 476, 26 S. W. Rep., 1087; but the court in that case held that that case, where eight of the twelve jurors made an affidavit attacking their own verdict, and by praying the court for a new trial, presented an extreme case, and they considered that affidavit and reversed that case. In our opinion the lower court should not have permitted it being filed or considered, and we are of opinion that, even though filed and considered, it does not show such coercion as would justify the lower court, and especially this court, in granting a new trial because thereof." So the affidavit of the juror Scott, impeaching his verdict, which is made a part of the motion for a new trial, should not have been permitted by the lower court.

However, there is contained in the record a statement of facts which purports to give in full the testimony of this juror, Scott, and many of the other jurors and others, which it is shown was heard by the court on the hearing of the motion for a new trial. The court adjourned for the term on September 27, 1910, allowing 30 days after adjournment to file the statement of facts and bills of exception. The State has made a motion to strike from the record the said statement of facts heard and shown by the record on motion for new trial, because it was signed, approved and filed after the term of court at which appellant was tried and convicted, and the court had adjourned, and that the State's contest of this motion is not supported by affidavit, nor in such form as to authorize the introduction of the testimony of the jurors, and that the clerk was without authority to copy the said statement in the transcript. This statement of facts on this motion was filed in the lower court on October 21, 1910.

It has been uniformly held by this court that such statement of facts is not embraced nor intended to be embraced in providing for filing of statement of facts and bills of exception on the main trial of the case after the adjournment of court. Probest v. State, 60 Texas Crim. Rep., 608, 133 S. W. Rep., 263, and cases therein cited. This principle is well established by all the decisions of this court. The motion to strike out the statement of facts on this question is, therefore, sustained, and the said statement of facts on the motion for new trial is struck out and not considered by this court.

The State objects and insists that as the affidavit of the juror, Scott, was made before Mr. Lipscomb, the appellant's attorney, that this court should not consider the same for any purpose. Presiding Judge Davidson for this court, in the case of Maples v. State, 60 Texas Crim. Rep., 169, 131 S. W. Rep., 567, says: "Among other grounds of the motion for new trial, appellant alleges that the private prosecuting counsel in the case, a notary public, had no authority to take the affidavits appended to the State's contest. The motion for new trial alleges misconduct on the part of the jury, in that they discussed the fact that appellant did not testify in his own behalf, and also received evidence to the effect that he and another party had been previously

convicted for arson, and that his case had been appealed and reversed; whereas, the other party had been sent to the penitentiary. There were no affidavits, except that of the defendant attached to his motion for new trial, supporting this ground of the motion; but request was made to have the jurors brought in and testify in regard to their conduct. Mr. Lipscomb, private prosecutor in the case, took the affidavits of the jurors and appended same to the State's contest of the motion for new trial. Motion was made by appellant to strike out these affidavits as they were unwarranted and could not be taken by counsel in the case. We are of opinion this proposition is well taken. The county attorney could not swear the jurors to such an affidavit, nor can interested counsel do so. See Testard v. Butler, 20 Texas Civ. App., 106, 48 S. W. Rep., 753; Rice v. Ward, 93 Texas, 532, 56 S. W. Rep., 747; Blum v. Jones, 86 Texas, 492, 25 S. W. Rep., 694; Floyd v. Rice, 28 Texas, 341; Rice v. Ward, 93 Texas 532, 56 S. W. Rep., 747. See also 13 Cyc., 852, for collation of authorities.

"We would not reverse this case alone upon this proposition for the reason that the jurors were brought into court and testified; but, to prevent the happening of this matter in future trials, we have taken it up and decided it. Under our statute the court may decide a motion for new trial on contested issues by means of affidavits or by hearing testimony. Of course, the affidavits mentioned in the statute means such as can be legally taken. An affidavit taken by a party not authorized to administer oaths in the particular transaction would not constitute a legal affidavit, and, therefore, not the basis of testimony on objection. See authorities cited, supra."

Besides this the court's order on the motion for new trial overruling it shows clearly, after reciting that the motion came on to be heard when all parties were present, "and the court having heard said motion and the evidence thereon submitted, it is the opinion of the court that the same should be overruled," and the court did then overrule it. The affidavit of Scott, if it could be considered as such, is not shown to have been introduced in evidence before the judge on the hearing of the motion for new trial, nor does the record show what other evidence was introduced except as shown above that "the court heard the evidence thereon submitted." From all this it is clearly shown that the court did hear testimony. As we are not advised what this testimony was, we must treat the judgment of the court on hearing the motion as in any other cases where there is no statement of facts, and that is, that the judge committed no error, and that there was ample evidence before him to sustain his action in overruling the motion. Such being the case, no error is shown by the court overruling the appellant's motion for a new trial.

There are no other questions raised in any way that require any further discussion. The record shows that the case has been vigorously prosecuted by the State and as vigorously defended by the appellant,

the evidence clearly justifies the verdict, which was a matter exclusively for the jury and the lower court, and there being no reversible error pointed out, the judgment is in all things affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.
[Rehearing denied November 15, 1911.—Reporter.]