## MANNIE HICKS v. THE STATE.

No. 2679. Decided November 26, 1913.

Rehearing overruled March 4, 1914.

(Dissenting opinion December 21, 1914.)

### 1.—Murder—Bystander's Bill of Exceptions.

A bystander's bill of exceptions proven up and filed thirty-eight days after the adjournment of the trial court, without an order of extension after the first thirty days had expired, can not be considered by this court.

### 2.—Same—Statement of Facts—Bills of Exception—Filing.

A statement of facts of the evidence of the trial may be filed at any time within ninety days after the adjournment of the court, or after the overruling of the motion for new trial in case the term of court lasts longer than eight weeks, without any order of the court to that effect. Bills of exception are allowed to be filed within thirty days after said time without any order of court, or thereafter if the time be properly extended; provided, the same does not exceed ninety days.

### 3.—Verdict by Lot—Motion for New Trial—Supporting Affidavits.

Where the defendant in his amended motion for new trial alleged that the verdict of the jury was arrived at by lot, but the same was not sworn to by the defendant or anyone else, and was not supported by the independent affidavit of anyone whomsoever, the same can not be considered by the trial court, and the court's action in overruling same, and refusing to hear evidence thereon, will not be reviewed on appeal Following Byrant v. State, 69 Texas Crim. Rep., 457, and other cases. Davidson, Judge, dissenting.

### 4.—Same—Attorney and Client—Affidavit.

An affidavit attacking the verdict of the jury can not be considered by this court, and is a nullity, even though sworn to, if the affidavit is made before defendant's attorney. Following Maples v. State, 60 Texas Crim. Rep., 169, and other cases.

### 5.—Same—Evidence—Husband and Wife—Cross-examination—Impeachment.

Where, upon trial of murder, the evidence developed that defendant's wife had formerly been married to deceased and had had two children while married to the latter, over whose possession there arose a controversy between deceased and his former wife, etc., and defendant introduced his said wife on said trial who testified that the deceased was the father of both of her said chil-

dren, the older of which was born after wedlock with deceased; whereupon the State was permitted on cross-examination to ask defendant's wife if defendant, and not deceased, was the father of her older child, and if she had not made the statement that deceased was not the father thereof, which she denied, whereupon the State was permitted to show that she did make such statements, there was no reversible error.

### 6.—Same—Argument of Counsel—Harmless Error.

Where there was no controversy that the defendant killed the deceased, or as to the immediate facts of the killing, there was no reversible error in the argument of State's counsel that the State had proved the killing, etc., by several good witnesses and that defendant had not contradicted their testimony, etc., and the error, if any, was harmless.

### 7.—Same—Letters—Practice—Retirement of Jury.

Where, upon trial of murder, some letters written by the deceased to the wife of the defendant were introduced in evidence, disclosing that deceased wished her to abandon defendant and live with deceased in illicit intercourse, all of which were read in the presence of the jury and fully discussed, there was no reversible error in the court's disregard of defendant's request that the jury take these letters with them in their final deliberations.

### 8.—Same—Statutes Construed.

Article 751, Code Criminal Procedure, providing that the jury on their retirement may take with them all the original papers, etc., is simply directory and not mandatory.

### 9.—Same—Charge of Court—Murder in Second Degree—Self-defense.

Where appellant contended that the court's charge on murder in the second degree required that they should convict him of that degree of murder, unless they found him not guilty under his plea of self-defense, and thereby eliminated manslaughter, but it appeared from the record on appeal that when the charge of the court was construed as a whole, as it should be in all cases, such complaint was untenable; there was no reversible error on that ground. Following Martinez v. State, 30 Texas Crim. App., 129, and other cases.

### 10.—Same—Charge of Court—Exceptions—Article 743.

Where appellant complained of the court's charge on murder in the second degree, but it appeared from the record that he took no exception whatever to said charge of the court before the trial was completed, and did not complain thereof except in his amended motion for new trial, the same can not be reviewed on appeal, and there was no error under article 743, Code Criminal Procedure.

### 11.—Same—Manslaughter—Self-defense—Charge of Court.

Where, upon trial of murder, the court's charge on murder in the second degree, on self-defense and manslaughter were submitted in separate and complete paragraphs and were in all respects sufficient, when the court's charge was considered as a whole, there was no reversible error.

### 12.—Same—Form of Charge—Murder in Second Degree.

While it is true that this court has laid down and approved a form of charge on murder in the second degree in cases where self-defense and manslaughter are raised by the evidence, yet this court does not hold that where these defenses are not excepted in the particular paragraph of the court's charge that the same would be necessarily erroneous where the application of the principle is set out in other portions of the court's charge. Distinguishing Best v. State, 58 Texas Crim. Rep., 327, and other cases.

### 13.—Same—Self-defense—Charge of Court—Words and Phrases.

Where, upon trial of murder, the court submitted a proper charge on self-defense when taken as a whole, a complaint that said charge merely laid down abstract propositions of law, and did not apply the law to the facts or cover

the questions of apparent danger from defendant's standpoint, and the phrase used in the charge "words coupled with acts" could not have injured defendant, there was no reversible error; besides, self-defense was not in the case. Following Jones v. State, 63 Texas Crim. Rep., 394.

14.—Same—Threats—Charge of Court.

Where, upon trial of murder, the evidence did not raise the issue of threats, there was no error in the court's failure to charge thereon.

15.—Same—Manslaughter—Charge of Court—Insult to Female Relative.

Where, upon trial of murder, the defendant claimed insulting words and acts by the deceased towards his wife, and the State claimed that defendant killed deceased over a controversy as to the custody of a minor child of the deceased, and the court in his charge on manslaughter followed substantially, if not literally, the statute on the subject and properly applied the law to the evidence, there was no reversible error.

16.—Same—Excessive Verdict.

Where, upon trial of murder, the defendant was convicted of murder in the second degree and his punishment assessed at nineteen years imprisonment in the penitentiary, and the evidence fully sustained the verdict of the jury, the same was not excessive.

17.—Same—Mistake of Facts—Practice on Appeal.

Where, upon rehearing, it appeared that some mistake of facts were made in dictation in the original opinion, but the same were immaterial, there was no reversible error.

18.—Same—Verdict by Lot—Motion for New Trial—Common Law.

Even if it were granted that the statute as to a motion for new trial alleging a verdict by lot did not in express language require the motion setting up matters extrinsic the record to be sworn to, then the rule of the common law, as provided under article 26, Code Criminal Procedure, must be applied and govern, and such motion must be supported by affidavit or the same will not be considered by the trial court or this court. Following Gordon v. State, 29 Texas Crim. App., 410, and other cases. Davidson, Judge, dissenting.

19.—Same—Attorney and Client—Affidavit.

Affidavits made by the defendant before his attorney and attached to a motion for new trial or contesting the same, can not be considered. Following Patterson v. State, 63 Texas Crim. Rep., 297, and other cases.

20.—Same—Motion for New Trial—Written Pleadings.

Appellant's contention that the lower court should take as confessed his motion for new trial, unless expressly contested by State's counsel by written pleadings, even if the motion alleges an extrinsic fact attacking the verdict of the jury, is a doctrine that can not be sanctioned by this court.

21.—Same—Verdict by Lot—Abandoned Agreement.

Where defendant complained of a verdict by lot, but it appeared from the record on appeal that the jury had abandoned their previous agreement to abide by the result of their balloting by lot, the verdict would be valid. Following Cravens v. State, 55 Texas Crim. Rep., 519.

22.—Same—Stating Facts in Opinion—Mistake in Stating Facts.

Where it appeared on motion for rehearing that this court had inadvertently used the words, "prior to," in referring to the marriage of deceased and the paternity of the older child, when, instead, the court should have used the word "after, etc," this mistake is now here corrected.

23.—Same—Sufficiency of the Verdict—Murder in Second Degree—Stating Facts in Opinion.

Where this court did not undertake to state all the evidence or its de-

tails, but merely stated some of the conclusions, which the whole evidence authorized, and if any mistakes in stating the facts were made in the original opinion, they could not have affected the decision of the case, and the testimony showed murder in the second degree, of which defendant was convicted, the fact that the evidence also raised the issue of manslaughter, all of which was submitted by the court under a proper charge, would not be a cause of reversal, and the judgment must be affirmed.

24.—Same—Manslaughter—Murder in Second Degree—Charge of Court.

Two requisites are necessary to constitute manslaughter; first, sudden passion; second, that that sudden passion must arise from an adequate cause, and that in order to show that an unlawful homicide is manslaughter, and not, at least, murder in the second degree, such homicide must be committed under the immediate influence of sudden passion arising from an adequate cause; and where the court correctly applied this principle to the facts, and the jury convicted defendant of murder in the second degree, there was no reversible error. Following Puryear v. State, 56 Texas Crim. Rep., 231, and other cases.

Appeal from the District Court of Caldwell. Tried below before the Hon. Frank S. Roberts.

Appeal from a conviction of murder in the second degree; penalty, nineteen years imprisonment in the penitentiary.

. The opinion states the case.

O. Ellis, Jr., and W. & E. B. Coopwood, for appellant.—On question of cross-examination of the wife: Holland v. State, 60 Texas Crim. Rep., 117, 131 S. W. Rep., 561; Meyer v. State, 41 S. W. Rep., 632.

On question of not permitting jury to take letters with them in retirement: Heard v. State, 9 Texas Crim. App., 1; Grayson v. State, 40 Texas Crim. Rep., 573.

On question of court's charge on self-defense: Tillery v. State, 24 Texas Crim. App., 251; Meuly v. State, 26 id., 274; Snowberger v. State, 58 Texas Crim. Rep., 530, 126 S. W. Rep., 878.

On question of court's charge on manslaughter: Bracken v. State, 16 S. W. Rep., 192; Stanton v. State, 59 S. W. Rep., 273; Adams v. State, 60 S. W. Rep., 48.

On question of court's charge on murder in second degree: Reagan v. State, 70 Texas Crim. Rep., 498, 157 S. W. Rep., 183.

On question of verdict by lot: Benevidas v. State, 57 Texas Crim. Rep., 170, 121 S. W. Rep., 1107.

C. E. Lane, Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Upon a charge of murder appellant was convicted of murder in the second degree and his punishment fixed at nineteen years confinement in the penitentiary.

The conviction occurred on April 11, 1913. On April 15th appellant filed his amended motion, in lieu of his original, for a new trial, the last ground of which is as follows: "Because the jury arrived at their verdict by lot, that is to say, the defendant is advised and believes and the facts are that the verdict of the jury was arrived at in this manner,

the twelve jurors placed on a sheet of paper the number of years he was in favor of confining the defendant in the penitentiary, then adding the several figures then divided the whole sum by twelve, thus arriving at the nineteen years imprisonment for the defendant, the jurors having agreed in advance to abide by the result by such lot. The defendant asks the court to hear testimony as to how the jury arrived at their verdict, and that a new trial be granted."

There appears in the record what would be appellant's bill of exception No. 3 on this point if it had been allowed by the court. But the court refused to approve it and stated that he did so for the reason that a bill involving the same matter was presented during the term of said court. Then there appears in the record what must be this bill referred to by the court. The court qualified that bill by stating: "No issue as to the misconduct of the jury having been submitted to the court, the jury was not permitted to be sworn and impeach its verdict which appeared not partial or unfair under all of the facts of the case." This bill would show that when appellant's said amended motion for new trial was heard on April 15, 1913, appellant had eight members of the jury in open court and asked permission to swear them "by whom the defendant's attorneys stated they believed, and said they had been so informed, they could prove that the verdict of the jury was arrived at in this manner; that the twelve jurors agreed in advance that each man set down the number of years he was in favor putting the defendant in the penitentiary for, to add up the twelve sums, and to divide the total sum by twelve, and that each of the jurors agreed to be bound by the result obtained, that each juror did put the amount or number of years he was in favor of on a piece of paper, and all of the different numbers of years were added together, and were then divided by twelve and the result was nineteen years, and that the jury then affixed his punishment in their verdict at nineteen years in the penitentiary." From all that appears in the record on this subject, the above presents the matter substantially correctly.

Then there appears in the record on this subject what purports to be a bystander's bill, which was not taken or attempted to be filed until May 26, 1913, thirty-eight days after the court had adjourned for the term. The court made and filed a qualification of this purported bystander's bill which, he says, was filed "without my knowledge or notice to the district attorney, was presented to me for approval within the time prescribed by law and same was disallowed for the reason therein indorsed, and being in substance as follows: For the reason that a bill of exception to the same subject matter, viz: the refusal of the court to hear testimony on defendant's motion for a new trial had been duly prepared by the defendant and presented to me for approval and by me duly approved and, as approved, agreed to and accepted by the defendant and ordered filed as a part of the record in this case during the session of the court and which bill of exception so approved, in substance, states the true facts as to the action of the court in refusing

to hear testimony on said motion for new trial. The clerk of the court is ordered to file the foregoing statement and explanation in connection with said purported bill of exception, make same a part of the record in this cause."

There is but one order in the record which is dated April 15, 1913, by which it is ordered "the defendant be and he is hereby granted thirty days after the adjournment of this court in which to file a statement of facts and bills of exception."

The statute authorizes a statement of facts of the evidence on the trial of the cause to be filed at any time within ninety days after the adjournment of court, or ninety days after the order overruling the motion for a new trial in case the term of court lasts longer than eight weeks, without any order of the court to that effect. It also allows the filing of bills of exception within thirty days after said time, without any order of the court, but if the bills of exception are not filed within said thirty days, then they can not be legally filed, unless the court by order properly and timely made, authorizes the filing of such bills of exceptions after said thirty days. By such proper order, timely made, the time for filing such bills of exception may be extended for ninety days but no longer. Section 7, page 266 of the Act approved March 31, 1911, of the Thirty-second Legislature, at its regular session. This not only is statutory, but this court has all the time so held in a large number of cases unnecessary to cite. So that under no circumstances is this court required or authorized to consider said purported bystander's bill proven up and filed thirty-eight days after the adjournment of court.

As shown above, the said ground of the motion for new trial was not sworn to by appellant or anyone else, and was not supported by the independent affidavit of anyone whomsoever. In Bryant v. State, 69 Texas Crim. Rep., 457, 153 S. W. Rep., 1156, this court said: "It has always been held that when matters extrinsic the record are sought to be raised in the motion for new trial, such grounds should be verified by the affidavit of the appellant," citing Barber v. State, 35 Texas Crim. Rep., 70. See, also, Serop v. State, 69 Texas Crim. Rep., 399, 154 S. W. Rep., 558. This court has uniformly and in many cases held that an affidavit attacking the verdict of the jury can not be considered by this court and is a nullity, even though sworn to, if the affidavit is made before appellant's attorney. Maples v. State, 60 Texas Crim. Rep., 169; Patterson v. State, 63 Texas Crim. Rep., 297; Scott v. State, 65 Texas Crim. Rep., 40, 143 S. W. Rep., 610. So that, as this matter is shown in the record, the action of the court presents no reversible error.

The record shows that several years before the killing of Emmett Moore, deceased, by appellant that said Moore and appellant's wife had been married, but divorced, and that after the divorce said Moore had married another woman and appellant had married and was living with the former wife of Emmett Moore, Sallie, as his wife; that when Moore and Sallie were divorced, Sallie had two children. After the divorce,

a question came up between them as to the custody of the younger of these two children. Deceased had procured its custody and had his mother take charge of it for him and she kept such charge for about a year. Shortly before the killing Sallie had managed to get possession of this child, without the consent of the deceased, and the deceased began to try to regain possession of the child. He was much attached to it. Sallie had all the time retained the possession of her older child. Deceased at no time attempted to get possession of that child. The theory of the State was, and there was evidence tending to support it, that the killing occurred because of the deceased's repeated attempts to regain possession of this younger child. Appellant's contention was that the killing did not occur about the possession of this younger child, but that it occurred because of the deceased's conduct towards appellant's wife in attempting to induce her to leave appellant and come back to and live with the deceased, and the deceased's repeated attempts to induce Sallie to do this and his solicitations to get away from appellant and have illicit sexual intercourse with him. Appellant introduced his wife, Sallie, as a witness for him and had her testify, among other things, that the deceased was the father of both of her children. This older child was born within a few months prior to the marriage of deceased and Sallie, and the question arose as to the paternity of that older child. Her conception resulting in the birth of this child occurred months before deceased and she were married. The State attempted to show that appellant and not deceased was the real father of Sallie's older child. Sallie testified, at appellant's instance, that deceased and not appellant was the real father of her older child. In this attitude the State was permitted, in cross-examination of Sallie Hicks, appellant's wife, when she was on the stand, after she had testified in substance as stated above, to ask her if appellant and not deceased was the father of her older child. And further, that a few days before the trial when the deputy sheriff, Mr. Ellison, summoned her as a witness, if she did not tell him that deceased was not the father of her older child and that deceased did not claim the said older child as his. She denied telling Mr. Ellison any such thing. The court then permitted the State to introduce Ellison and prove by him that at said time and place she did make to him that statement. The court, in qualifying appellant's bills on this subject, stated substantially that such were the issues and the evidence introduced by appellant and testified to by his wife, and that he permitted the cross-examination of appellant's wife and the contradiction of her by Mr. Ellison under the circumstances. In our opinion, under the circumstances of this case, the action of the court was correct.

By another bill appellant complains of the language by the district attorney in his closing argument to the jury to the effect that the State had proved the main facts of the case, as to the actual killing, by good white men, naming them, and that we have several other witnesses summoned, both black and white, by whom we could have proven the same facts, but consider it useless to put them on the stand as defendant

had not contradicted their testimony; that the said witnesses were present and would have testified as the other witnesses, and the defendant could have put them on the stand if the State's witnesses had not told the truth. The court, in approving appellant's bill to this effect, states that no written instructions were asked by defendant to said remarks. There was no controversy that appellant killed the deceased,—he himself so testifying and there was practically no difference between him and the State's witnesses as to the immediate facts of the killing. Even if the district attorney's remarks were improper, under the facts of this case, they present no reversible error.

The appellant produced, identified and introduced in evidence some letters by the deceased to his said wife, Sallie. One of them is quite lengthy. As a whole they show that the deceased claimed to have great affection for her and for her and his younger child, and was pleading for her to abandon appellant and go back to him and live with him in illicit sexual relations. Appellant's bills show that, after argument for both sides had been concluded and the court had charged the jury, and they were ready to retire to consider their verdict, appellant's attorneys privately approached the court and requested that the jury be permitted to take these letters with them in their retirement. This request was not made in the hearing of the jury and the jury at no time requested to have the letters with them, and the court did not at any time advise the jury that they could not have said letters in their final deliberations. The bills, as qualified by the court, further show that all these letters were read distinctly and intelligently to the jury by counsel when offered in evidence, and in the argument to the jury their contents was fully and ably discussed and the jury was fully advised of all therein contained.

Our statute, article 751, Code of Criminal Procedure, provides: "The jury may take with them on their retirement to consider their verdict, all the original papers in the cause, and any papers used as evidence." This article of the statute shows that it is not mandatory but permissible and it has always been so held and construed by this court. See some of the decisions cited under this article in the Revised Code of Criminal Procedure of 1911, and in note by Judge White under the same article in his Ann. C. C. P. The action of the court presents no reversible error.

Appellant's other complaints are attacks on the court's charge and the refusal of the court to give some charges requested by him. Most of these complaints are very general and point out no specific error. However, we will pass on all of them, considering those raising kindred subjects together.

One complaint in effect is that the court's charge on murder in the second degree required that they should convict him of that degree of murder, unless they found him not guilty under his claimed self-defense, and claimed that thereby the court eliminated from the minds of the jury manslaughter, thereby virtually telling the jury that they must either convict of second degree murder or find self-defense.

It is elementary in this State that in determining the sufficiency of a charge it must be construed as a whole and not by isolated extracts, excerpts, or paragraphs, and that a charge on a murder trial can not all be given in one paragraph, but must necessarily be given in several. In discussing this question it will be necessary to show what the court did charge in this case.

After correctly defining murder in the first degree in accordance with the statute, in a separate paragraph, the court told the jury: "Murder is distinguishable from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or manslaughter or which excuse or justify the homicide." This is a quotation of the latter part of the definition of murder, art. 1140, P. C. The charge then defines malice, and express malice, and proceeds to fully instruct the jury correctly as to murder in the first degree and submit that degree of murder to the jury for a finding. Then he takes up murder in the second degree, defines it and submits that degree to the jury for a finding, charging as follows: "Malice is also a necessary ingredient of the offense of murder in the second degree. The distinguishing feature, however, so far as the element of malice is concerned, is that in murder in the first degree malice must be proved, to the satisfaction of the jury, beyond a reasonable doubt, as an existing fact, while in murder in the second degree malice will be inferred from the fact of an unlawful killing.

"Implied malice is that which the law infers from or imputes to certain acts, however suddenly done. Thus, when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, nor tend to mitigate, excuse or justify the act, then the law implies malice, and the murder is in the second degree; and the law does not further define murder in the second degree than if the killing is shown to be unlawful, and there is nothing in the evidence on the one hand showing express malice, and on the other hand there is nothing in evidence that will reduce the killing below the grade of murder, then the law implies malice, and the homicide is murder in the second degree.

"The instrument or means by which the homicide is committed are to be taken into consideration in judging the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears.

"Every person is permitted by law to defend himself against any unlawful attack, reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. Homicide is justified by law when committed in defense of one's own person against any unlawful and violent attack, made in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury.

"If you believe from the evidence, beyond a reasonable doubt, that

the defendant, with implied malice, in the County of Caldwell, and State of Texas, on the 29th day of March, 1913, as alleged, with a deadly weapon and not in his own self-defense as the same is herein defined, did shoot and thereby kill Emmit Moore as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment at confinement in the State penitentiary for any period that the jury may determine and state in their verdict, provided it be not less than five years."

The definition of murder in the second degree and how and when the law infers malice from an unlawful killing in exact accordance with the two paragraphs of the court's charge above quoted, has been the established law of this State ever since we have had two degrees of murder. Judge White, in his Ann. P. C., in sec. 1257, after stating what is ipso facto murder of the first degree, says: "If, however, they do not establish murder committed in one of these modes, and do not show any justification, excuse or mitigation for the homicide, the law implies the malice and the murder is in the second degree," citing McCoy v. State, 25 Texas, 33; Jordan v. State, 10 Texas, 479; Hamby v. State, 36 Texas, 523; Jones v. State, 13 Texas, 168; Atkinson v. State, 20 Texas, 522; Farrer v. State, 42 Texas, 265; Ferrell v. State, 43 Texas, 503; Hill v. State, 11 Texas Crim. App., 456; Ellison v. State, 12 Texas Crim. App., 557; Neyland v. State, 13 Texas Crim. App., 536; Martinez v. State, 30 Texas Crim. App., 129; Childers v. State, 33 Texas Crim. Rep., 509; Baltrip v. State, 30 Texas Crim. App., 545.

Again in section 1259 he says: "Implied malice is the essential characteristic of murder in the second degree. It is not a fact, but an inference or conclusion deducible from particular facts and circumstances judicially ascertained. Thus, when the fact of an unlawful killing is established and there are no circumstances in evidence which show the existence of express malice, or which tend to mitigate, excuse or justify the act, then the law implies malice and the offense is murder in the second degree," citing Martinez v. State, supra; Harris v. State, 8 Texas Crim. App., 90; Tooney v. State, 5 Texas Crim. App., 163; Douglass v. State, 8 Texas Crim. App., 520; Hubby v. State, 8 Texas Crim. App., 597; Hill v. State, supra; Ellison v. State, supra; Neyland v. State, supra; Reynolds v. State, 14 Texas Crim. App., 427; Turner v. State, 16 Texas Crim. App., 378; Stanley v. State, 16 Texas Crim. App., 392; Smith v. State, 19 Texas Crim. App., 95; Hart v. State, 21 Texas Crim. App., 163; Baltrip v. State, supra.

This court in Barton v. State, 53 Texas Crim. Rep., 443, expressly approved and commended as admirably presenting the law on the subject a charge of which the two paragraphs first above quoted are literally the same. Mr. Branch, in his Criminal Law, section 426, in the first subdivision on page 255, gives as a correct charge, substantially the first paragraph above quoted, citing Douglass v. State, 8 Texas Crim. App., 520; Neyland v. State, 13 Texas Crim. App., supra, and Gonzales v. State, 30 Texas Crim. App., 203, and then follows with a

literal copy of the second paragraph as the law on the subject, and cites Barton, supra; Megrath v. State, 35 Texas Crim. Rep., 413; Smith v. State, 45 Texas Crim. Rep., 552; Carson v. State, 57 Texas Crim. Rep., 394, and Harris v. State, 8 Texas Crim. App., 90.

There can be no question but that the first two paragraphs of the court's charge above given are unquestionably correct.

The appellant took no exception whatever to the charge of the court on murder in the second degree before the trial was concluded. He first complained of it in his said amended motion for new trial. He asked no instruction on the subject to cure the defect, if there be an injurious defect in the court's charge. Article 743, Code of Criminal Procedure, as it was in force at the time of this trial, prohibits this court under such circumstances from reversing the judgment, unless the error appearing from the record was calculated to injure his rights. This must be determined from the whole record.

In addition to what is quoted above, as portions of the court's charge, the court in separate complete paragraphs charged on self-defense and plainly told the jury that if appellant killed the deceased in self-defense to acquit him. The court also charged manslaughter under the statute in separate and complete paragraphs, and in submitting manslaughter told the jury that if they believed beyond a reasonable doubt all of the facts which show manslaughter to find appellant guilty of manslaughter and assess his punishment accordingly, and in two other paragraphs he told the jury:

"Should you find the defendant guilty of murder in the first degree, guilty of murder in the second degree, or guilty of manslaughter, you will state of which offense found guilty; and if of murder, you will state of which degree of murder, and for whatever offense you may find him guilty, you will affix the punishment for that crime as above directed.

"If from the evidence you are satisfied beyond a reasonable doubt that the defendant is guilty of murder, but have a reasonable doubt whether it was committed upon express or implied malice, then you must give the defendant the benefit of such doubt and not find him guilty of a higher grade than murder in the second degree. Or, if from the evidence you believe beyond a reasonable doubt that the defendant is guilty of some grade of culpable homicide, but you have a reasonable doubt whether the offense is murder in the second degree or manslaughter then you must give the defendant the benefit of the doubt and in such case if you find him guilty it could not be of a higher grade of offense than manslaughter." Then in addition, charged that the burden of proof is on the State and the defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and in case you have a reasonable doubt as to defendant's guilt you will acquit him and say by your verdict not guilty.

It is true that this court, in Best v. State, 58 Texas Crim. Rep., 327, and cases following it, laid down and approved a charge on submitting murder in the second degree, wherein, when self-defense and man-

slaughter are both raised in the case, embracing an exception of both self-defense and manslaughter, which we still commend; but the court in that case and in those following it, does not hold that where these defenses are not excepted, that the charge would be necessarily erroneous. On the contrary this court has repeatedly held that where such exceptions are not made in submitting murder in the second degree for a finding, but are in other portions of the charge specifically submitted, that no reversible error is presented. Childs v. State, 35 Texas Crim. Rep., 573, 34 S. W. Rep., 939; McGrath v. State, 35 Texas Crim. Rep., 413, 34 S. W. Rep., 941; Smith v. State, 48 Texas Crim. Rep., 233; Foster v. State, 51 Texas Crim. Rep., 77; and see, also, Puryear v. State, 56 Texas Crim. Rep., 231; Davis v. State, 57 Texas Crim. Rep., 545; Pratt v. State, 59 Texas Crim. Rep., 167; and Pratt v. State, 59 Texas Crim. Rep., 635. So that appellant's complaint of said charge under the facts and circumstances of this case does not present any reversible error.

Several general complaints are made by appellant to the court's charge on self-defense, such as the failure to submit "a clean cut charge of self-defense," simply submitting abstract propositions and not applying the facts to the law. Wherein or how is not pointed out. Again, on that subject, failing to apply the facts to the law of apparent danger. Again, that the jury must view all the facts and defendant's surroundings from his standpoint. Again, "in an attempt to charge on self-defense and apparent danger by using the words: 'Upon the law of self-defense you are instructed that if from the acts of the said Emmett Moore, or from his words, coupled with his acts,' the court by using the words 'his words coupled with his acts' charged the jury in substance that they must find before they find self-defense that the deceased, at the time of the homicide, used some words towards defendant, when in fact there were no words used, nor relied upon by the defendant." Appellant requested two special charges along the same line, which were refused.

Even if the evidence in this case in any way called for a charge on self-defense, taking the court's charge as a whole, we think all of appellant's complaints are without foundation, and that they are substantially met by the charge of the court which was given. In submitting self-defense the court did not merely lay down abstract propositions of law and not apply the facts to the case, as claimed by appellant, and did cover the question of apparent danger and required the jury to consider the facts from the defendant's standpoint. Appellant's complaint that the court in instructing self-defense used "words coupled with acts" could not have affected appellant injuriously. If at all, that expression would have been in his favor and not against him.

However, we desire to say that in our opinion, after a most careful and thorough study of the evidence in this case, self-defense was not in the case and should not have been submitted by the court. But its submission was clearly in favor and not against him, and, of course,

he can not complain because thereof. Jones v. State, 63 Texas Crim. Rep., 394, and authorities therein cited.

The evidence does not show that deceased made any threat against appellant; hence, no charge on threats was called for.

Appellant had several complaints of the charge of the court on manslaughter. The first is that in charging upon, and what constituted, adequate cause he charged only on insulting language towards appellant's wife and ignored and eliminated from his charge all acts and conduct of the deceased at the very time of the killing that would tend to show adequate cause. The next complaint is inconsistent with this in that he therein complains that the court told the jury that the provocation must arise at the time of the killing, and that the passion was not the result of a former provocation and that the act causing death must be caused directly by the passion arising out of the provocation then given, etc. The court in the charge on manslaughter followed substantially, if not literally, our statute on the subject. And among other things he told the jury that the passion mentioned in the statute must spring from some provocation sufficient to produce in the mind of a person of ordinary temper such a degree of one of the mental emotions mentioned in the statute as to render, and at the time of the killing, did render, the mind of the defendant incapable of cool reflection, "and in determining such state of mind you must do so from all the evidence in the case." Then he told the jury that insulting words or conduct of the deceased towards appellant's wife was in law adequate cause, if such words or conduct were the real cause which provoked the killing; provided, that the killing took place immediately upon the happening of insulting conduct or uttering of the insulting words, or so soon thereafter as the party killing may meet with the party killed after having been informed of such conduct, and the jury is at liberty to determine in every case whether such insulting words or conduct were the real cause which provoked the killing; and if such words or conduct were the real cause which provoked the killing, and if the killing occurred at the first meeting of the parties, then the party killing could not be convicted of a higher offense than manslaughter. In submitting manslaughter for a finding he told the jury:

"If you believe from the evidence, beyond a reasonable doubt that the defendant, Mannie Hicks, in the County of Caldwell and State of Texas, on or about the 29th day of March, A. D. 1913, with a gun, the same then and there being a deadly weapon, and not in defense of himself against an unlawful attack reasonably producing a rational fear or expectation of death or serious bodily injury, did unlawfully shoot and thereby kill the said Emmett Moore, and you further believe from the evidence that at the time of the killing, if any, the mind of the defendant was under the immediate influence of sudden passion aroused by adequate cause, as the same is herein explained, and while the mind of the defendant was in such condition, he shot with intent to kill and did kill the deceased, then you will find the defendant guilty of manslaughter and assess his punishment at confinement in

the penitentiary for a term of not less than two years nor more than (5) years as you may determine and state in your verdict."

As stated above, the State's contention was, and there was evidence tending to show, that appellant did not kill the deceased because of the insulting words and conduct of the deceased towards his wife, but over the custody of the minor child of deceased by appellant's wife when they were married. The deceased's first insulting letter to appellant's wife was written by deceased and received by her in November, 1912, and appellant, as the uncontradicted evidence shows, had met the deceased several times since then. The last letter was written, it is true, just two days before the killing occurred, but about that same time his wife had received a letter from the deceased's attorney demanding the possession from her of said child, and showing that if she did not voluntarily surrender the child legal proceedings would be instituted by deceased for its possession, and that appellant took that letter to town with him the day of the killing and his first business in town was seeing about the possession of that child. It was proper, therefore, for the court to tell the jury that the insulting words or conduct of the deceased towards appellant's wife must have been the cause of the killing. Again, the evidence was sufficient to show that the deceased passed in a few feet of appellant the day of the killing and some time before the killing, but at that time appellant did not have his gun. Appellant himself testified that a short time before the killing he saw the deceased when the deceased had a gun, and that it was some time thereafter when he saw him again without any gun, when he, appellant, had his gun, loaded with buckshot; that he, without any provocation at that particular time, when the deceased was making no demonstration whatever, but quietly and peaceably walking along the streets with his hands swinging down, shot and killed him. We think none of appellant's attacks on the court's charge on manslaughter show any reversible error.

The verdict of the jury is not excessive in contemplation of law, nor the facts of this case. If the State's case is to be believed the killing of the deceased by appellant almost, if it did not fully, amount to a cold-blooded assassination.

There is nothing else raised that requires any discussion. The judgment will be affirmed.

*Affirmed.*

ON REHEARING.

March 4, 1914.

PRENDERGAST, PRESIDING JUDGE.—Before the original opinion was prepared, considered in consultation and handed down, the record in this case was read and studied again and again with a great deal of care. When the cause was submitted it was orally argued by appellant's able attorney. In addition, a very lengthy and elaborate brief was filed, all of which was also fully considered and appellant's brief studied carefully. Notwithstanding this, in dictating the opinion, some

mistakes in stating some of the facts were made. These have been pointed out in appellant's arguments on his motion for rehearing. It is difficult to understand how such mistakes are made in dictation and especially how they escape detection when reading the opinion and discussing the case in consultation. Such mistakes are always to be regretted. It is, in substance, conceded by appellant's attorneys in their arguments on rehearing that some, if not all, of these mistakes are somewhat immaterial. We think none of them are material.

In appellant's motion for rehearing he presents several of the same matters passed upon and decided in the original opinion. It is unnecessary to take up and discuss most of them again, but we will take up and discuss the material and important ones. Appellant, in presenting his motion for rehearing, by each of his attorneys, has filed quite lengthy, vigorous, and able arguments presenting their views and contesting the original opinion. These also have had full and careful consideration. We will now pass to the consideration of said material and important questions.

The first of these is appellant's contention that the ground of his motion for new trial, claiming that the verdict of the jury was reached by lot, should have been considered and the evidence of some of the jurors heard by the lower court, and that this court erred in not reversing the case because thereof. This matter was sufficiently stated in the original opinion. It is unnecessary to restate it here. As we understand appellant's contention and argument, it, in substance, is, that his motion for new trial on that ground did not have to be sworn to in order to present the question and require the lower court to swear and hear the jurors testify; contending that the statute does not so require. Concede, for the sake of the argument, that our *statute* in stating on what grounds a motion for a new trial may be granted, does not in express language, require the motion setting up matters extrinsic the record, to be sworn to, then what does our law say shall be required? Article 26, Code of Criminal Procedure, in unmistakable, clear and explicit language, says: "Whenever it is found that this Code fails to provide a rule of procedure in any particular state of case which may arise, the rules of the common law shall be applied and govern."

In 12 Cyc., 746, in like language, it is said: "In England at common law, and in most States as matter of practice, the motion for a new trial, when founded on facts not of record, is made on affidavits signed and sworn to by defendant or by some person having knowledge of the circumstances." Precisely to the same effect is I Chitty's Crim. Law, 659.

In II Thompson on Trials (2nd ed.), sec. 2758, he says: "By the practice of a majority of the States, where the grounds for new trial are other than that the verdict or judgment are contrary to the law or evidence, or that the trial court erred in some matter of law, *the motion must be supported by affidavit*, unless it is made upon the minutes of the court, by bill of exceptions or a statement of the case, according to the practice of many States. The grounds usually enumerated

are (1) irregularities; (2) misconduct of the jury, etc. . . . *In the absence of statutes requiring affidavits in support of the motion, by the practice of many States, they are held necessary. . . .*" To precisely the same effect is his same section in his first edition.

In 14 Ency. of Plead. & Prac., p. 904, it is again said: "When the ground for a new trial consists of extrinsic facts and matters not of record, such as irregularity of the court, jury, or prevailing party, or accident and surprise, or misconduct, or newly discovered evidence, the proper method is to set forth the facts by affidavits in support of the motion, as stated heretofore in considering these grounds for a new trial."

In 12 Ency. of Plead. & Prac., pp. 557-8-9, it is said: "When the objection has not been waived, misbehavior on the part of the jury is properly taken advantage of by a motion for a new trial. . . .

"When a party moves for a new trial on the ground of misconduct which occurred during the trial, he must aver and show affirmatively that both he and his counsel were ignorant of the misconduct charged until after the trial.

"*An application for a new trial on the ground of misconduct must be supported by affidavits as to the facts.* An affidavit to secure a new trial on account of the misconduct of a juror must clearly set out the facts constituting the alleged irregularity. The affidavit should be positive as well as specific, and should be sustained by oath and not merely founded on information and belief."

In 28 Cyc., p. 11, it is said: "In many jurisdictions it is a rule of practice that a motion based on facts outside of the record, or of which the court can not take judicial notice, must be supported by affidavits showing such facts."

We think there can be no sort of doubt but that these authorities establish, beyond question, that in order for appellant to have had considered his ground of motion attacking the verdict of the jury on any matter extrinsic the record itself, that, as a matter of pleading, he must support it by his own affidavit or the affidavit of someone else specifically showing the truth of the grounds of attack. And when it is not so sworn to or supported it presents no question requiring the lower court to consider or investigate it.

But we are by no means left to common law authorities or authorities outside of this State. They are ample, clear and to the point in this State.

Judge White, in section 1155 of his Code of Criminal Procedure, expressly gives the form of a motion for new trial under our statute. And under subdivision 3 of article 837, prescribing the ground of verdict by lot on which a motion for new trial shall be based, he gives this form: "3. The verdict of the jury was decided by lot (or, in a manner other than by a fair expression of opinion by the jurors) in this, towit: (here set out the facts) and defendant, in support of this ground for new trial, submits herewith the affidavits of the jurors

John Smith and Thomas Jones, etc., who sat upon and tried the case, said affidavits being marked as exhibits A and B."

In Johnson v. State, 24 S. W. Rep., 94, when Presiding Judge Hurt and Judges Davidson and Simkins constituted this court, through Judge Simkins they said: "The other ground upon which a reversal is sought is by impeaching the verdict of the jury. *This, however, can not be considered, as the affidavit does not appear in the record as being signed or sworn to.* We do not hesitate to say that if we were to consider it no good reason is shown for reversing this case. It does not pretend to state the names of the jurors who made the statement against appellant, nor that it influenced the jurors' finding in any way. *There was no issue tendered the State in said motion.* The judgment is affirmed."

In Morrison v. State, 39 Texas Crim. Rep., 519, when this court was composed of said Presiding Judge Hurt and Judges Davidson and Henderson, through Judge Henderson, they said: "Appellant assigned as one of the grounds of his motion for a new trial that the jury received other testimony than that developed on the trial of the case, towit, that one of the jurors stated in the jury room that a former jury which tried the case found defendant guilty, and assessed his punishment at twenty years in the penitentiary. Appellant stated in his affidavit that he was unable to procure an affidavit from any of the jurors as to the facts, because they were not willing to make one, and asked the court to summon the jurors who tried the case, and place them under oath, so that the defendant might have the benefit of their testimony. The State made a motion to strike out said affidavit and that part of the motion, because it was too general, and did not set up the facts. The court granted the motion, and struck out that part of the defendant's application for a new trial. Appellant then offered to show by one A. Cohen that he was one of the jurors who tried the case, and that, after the jury had retired to consider their verdict, some member of the jury stated that defendant on a former trial had been convicted, and given twenty years in the penitentiary; that said statement about what defendant had received as punishment at a former trial influenced him in the verdict rendered on the last trial. The district attorney objected to this evidence on the ground that it should be presented by affidavit, and not stated orally; whereupon defendant's counsel stated that the witness was unwilling to make an affidavit, but that he would swear to the above facts upon the stand under oath; and the court, over the defendant's objection, refused to allow said witness to testify as aforesaid. It is not necessary to decide the questions involved in this matter, as the case must be reversed on other grounds heretofore stated. We are inclined to the opinion, however, that the affidavit seeking to attack the verdict of the jury was too general. The practice of allowing jurors to impeach their verdict is not countenanced in the courts of most of the other States of the Union. See 2 Thomp. on Trials, sec. 2618, and authorities there cited. Our courts, however, have taken a contrary view, and we have gone to a

considerable extent in authorizing jurors to impeach their verdicts. The attempted impeachment here, however, as far as the predicate was concerned, stated no facts, and, we think, was too general in its terms. It is not deemed necessary to discuss what effect the announcement in the jury room that appellant had previously been convicted, and his punishment assessed at twenty years in the penitentiary, may have had upon the jury. The mere statement of that fact in the jury room may not have operated to the prejudice of appellant. Before a case would be reversed on this ground some prejudice must be shown. The bare statement that a former jury had tried the case, and rendered a certain verdict against defendant, would not ordinarily cause a reversal."

Again, when Presiding Judge White and Judges Hurt and Davidson constituted this court it, in Gordon v. State, 29 Texas Crim. App., 410, in an opinion by Judge Davidson, held: He stated that appellant filed his motion for new trial and therein alleged that on the trial below he did not plead, nor did his counsel for him, nor was he called on to plead, nor offered the privilege of pleading, and that neither he nor his counsel refused to plead so as to authorize the court to enter one for him. "This motion was sworn to by the defendant in the court below. There was a sworn motion also to correct the judgment by eliminating therefrom the recitation of the plea of not guilty therein entered. This, as well as the motion for a new trial, was overruled. There are no affidavits in the record as to the truth of these statements of defendant, except his own." Then in the opinion is copied what purports to be an affidavit not signed, purporting to be the affidavit of two of his attorneys, wherein it is stated that they examined said motion for new trial and that the matters and things set out therein are within their knowledge true and correct. To the bottom of this document this appears:

"Witness my hand and seal of office at Fort Worth, this the 24th day of January, 1891.

                              "L. R. Taylor, District Clerk."

The opinion proceeds to state that this document was filed January 24, 1891. It was not signed by either of the parties named in the body of it. It did not have the jurat of the officer attached to it, certifying the necessary oath was administered to said named parties, nor is there anything to indicate that they were sworn to its contents. Judge Davidson then says: ". . . It will be seen that it is not an affidavit. It can not be treated as an affidavit.

"Nothing will be indulged in favor of such matters when they operate as an attack upon the judgment of a court of record, to the end that the judgment may be set aside or vacated on appeal. Every presumption must and will be indulged by appellate courts, tending to uphold and sustain judgments of trial courts. A party attacking such judgments must make it apparent that sufficient error exists to set aside or annul them." And he affirmed said judgment.

In a death penalty case, which was affirmed, Shutt v. State, 71 S. W.

Rep., 18, this court, when composed of Davidson, Presiding Judge, and Judges Henderson and Brooks, through Judge Brooks, said: "In motion for new trial he (appellant) also complains that the foreman of the jury, Hardy, prior to being accepted upon the jury, stated that he did not have time to serve upon the jury; that he would acquit or convict defendant in five minutes. To strengthen appellant's position, he insists that the verdict was returned in thirty minutes. We can not review this question, in the absence of bill of exceptions. And there are no affidavits presenting this matter, but it is brought forward in the motion sworn to by appellant. It is well known that issues of fact made in motion for new trial must be sustained by evidence dehors the motion. The fact that appellant swore to the same is not sufficient," citing Gordon v. State, supra.

In the case of Moss v. State, 39 Texas Crim. Rep., 3, on rehearing, this court, through Judge Davidson, said: "The grounds of the motion for a new trial for that reason were not, and could not be, considered. The motion for rehearing is based upon the fact that said statement was not considered, and asserts as a fact that the county judge approved a statement of facts, and had it filed during the term at which the case was tried. This motion is signed by the attorneys, but there is nothing to indicate to this court that said statement of facts was approved and filed, or that there was any statement of facts prepared in the case, outside of this statement of the motion. This motion is not sworn to, and there is nothing in it, by way of certificate or affidavit or certified copies, that there is a statement of facts on file in the trial court, approved by the judge. *As the matter is presented to us in the motion, we can not consider it.*"

In Dignowitty v. State, 17 Texas, 521, when our Supreme Court had criminal jurisdiction on this subject it said: "The application for a new trial, resting upon the unsupported affidavit of the party, was manifestly insufficient, though its force had not been impaired by the counter affidavit or by anything appearing to the contrary, or the matters deposed to by the accused."

In Goodson v. State, 41 S. W. Rep., 605, this court, through Judge Davidson, said: "As the second ground of the motion for a new trial, appellant stated that Marcus Taylor was related to W. S. Brooks within the third degree, and the record shows that W. S. Brooks was joint owner of the stolen animal, and that, therefore, Marcus Taylor was disqualified as a juror. These matters are in no way verified in any part of the record, except that Brooks was a part owner of the animal, and there is no bill of exceptions showing that Marcus Taylor was a juror in the case. There is nothing except the simple statement of appellant in his motion for a new trial, indicating that Marcus Taylor was related to W. S. Brooks. If counsel desired this matter considered on appeal, they should have established it in some manner." See, also, Lester v. State, 2 Texas Crim. App., 432.

In Stubblefield v. Stubblefield, 45 S. W. Rep., 967, the Court of Civil Appeals of the Third District, through Chief Justice Fisher, on

this question said: "The point presented in the motion for a new trial that the juror Daniels was not qualified to sit upon the jury was not raised in a way that required the trial court to pass upon that question. Daniels, it seems, was one of the jurors that participated in the trial of the case. No objection was raised at the time as to his disqualification, which consisted, as stated in the motion for a new trial, of bias in favor of the plaintiff, and that he made statements to the jury after retirement to deliberate upon their verdict. The conduct of the juror in this respect, and his disqualification by reason of bias in favor of the plaintiff, are only called to the attention of the court *in the motion for a new trial, which was not sworn to;* nor is it supported by any affidavit whatever."

Kahanek v. Galveston, etc., R. R. Co., 72 Texas, 476, Chief Justice Stayton of our Supreme Court, in passing upon what character of affidavit could be considered in a motion for new trial, said: "It may be claimed, however, that appellant offered such evidence in connection with his motion for a new trial as was sufficient to show that the county judge was not disqualified. That consisted of an unsworn statement made by the county judge on the 10th of December, 1887, and filed with the motion. It was no part of the proceedings or record of the proceedings which were had on August 6, 1887, in the County Court.

"No bill of exceptions was taken to the action of the court in overruling the motion for a new trial, and we are unable to ascertain whether the court considered or refused to consider the statement made by the county judge.

"If he refused to consider it he did not err, even if upon an issue made he might have heard evidence for the respective parties as to the qualification of the county judge. Slaven v. Wheeler, 58 Texas, 23.

"When matters of fact are involved in the rulings of the court below such rulings will not be revised by this court, unless the facts are substantiated by proper bill of exceptions. Statements in a motion for new trial or assignment of error will not suffice." Marshall v. State, 5 Texas Crim. App., 273; Sharp v. State, 6 Texas Crim. App., 650.

In Jordan v. State, 10 Texas, 480, in discussing the ground of a motion for new trial of matters dehors the record, the Supreme Court said: "This court can not notice the mere statements of counsel made in their motion for a new trial." And further, on page 502, said: "In considering the motion, the court may judge, not only of the competency, but of the effect of evidence. There may be cases where the court might well grant a new trial, if, in the opinion of the Presiding Judge, injustice had been done; while, at the same time, should a new trial be refused, this court would not be warranted in reversing the judgment. The judge who presides at the trial is afforded much better and more ample means of judging of the merits of the application than the revising court can be. And, therefore, it is the governing rule of the action of this court, affirmed and enforced by repeated decisions, from the earliest cases upon the subject to the present time, not to reverse the judgment of the District Court refusing a new trial,

unless some principle of law has been violated, misconceived or disregarded, to the prejudice of the party, or there is good reason to apprehend that injustice has been done, in refusing the application. Though the District Court, in its discretion, upon the application of the accused, might have granted a new trial, if, from the evidence and circumstances of the case, as they were apparent to the Presiding Judge, in his opinion, the ends of substantial justice required it; yet, from anything before us in the record, we can not say that any principle or rule of law has been infringed or injustice done."

In Short v. State, 36 Texas, 644, the Supreme Court said: "After the verdict of the jury the defendant filed a motion for a new trial, and assigns as grounds for the motion two alleged errors. The second, which is, that there were not twelve competent and legal jurymen empaneled to try said case, appears first in the motion for a new trial, and is wholly unsupported by the record, and therefore deserves no further notice here."

In Forcy v. State, 60 Texas Crim. Rep., 206, it is said: "It has been many times held that a .mere statement of a fact in a motion for new trial or in bill of exceptions is not the equivalent of finding that the fact so stated is true."

In Salmon v. State, 69 Texas Crim. Rep., 506, 154 S. W. Rep., 1026, this court said: "Appellant contends in his motion for new trial that the verdict of the jury was reached by lot. This motion is not sworn to and is in no way supported by. any affidavit. Under such circumstances the court did not have to consider it."

We have already quoted in the original opinion what this court said in Bryant v. State, 69 Texas Crim. Rep., 455, 153 S. W. Rep., 1156: "It has always been held that when matters extrinsic the record are sought to be raised in motion for new trial, such ground should be verified by affidavit of the appellant."

In Serop v. State, 69 Texas Crim. Rep., 399, 154 S. W. Rep., 558, this court said: "In the motion for a new trial, defendant alleges that the jury discussed on their retirement the prevalence and frequency of robbery in the City of Dallas, and alleges that this discussion was detrimental to defendant. This ground of the motion is not supported by the affidavit of any juror nor any person who purports to know that such matters were discussed by the jury; therefore it presents no error." While some of these cases may not be directly in point, the trend of all of them are. The italics in quoting above are ours.

In the original opinion we also cited Maples v. State, 60 Texas Crim. Rep., 169; Patterson v. State, 63 Texas Crim. Rep., 297; Scott v. State, 143 S. W. Rep., 228, to the effect that the affidavits contesting the grounds of his motion for new trial extrinsic the record were void and could not be considered when made before the attorney for either side in the case. There are other decisions to the same effect unnecessary to cite. This court, through Judge Davidson, in said Maples case, supra, said: "Under our statute the court may decide a motion for

new trial on contested issues by means of affidavits or by hearing testimony. Of course, the affidavits mentioned in the statute means such as can be legally taken. An affidavit taken by a party not authorized to administer oaths in the particular transaction would not constitute a legal affidavit, and, therefore, not the basis of testimony on objection," citing Testard v. Butler, 20 Texas Civ. App., 106; Blum v. Jones, 86 Texas, 492; Floyd v. Rice, 28 Texas, 341; Rice v. Ward, 93 Texas, 532; 13 Cyc., 852, for collation of authorities.

Our statute, article 837, Code of Criminal Procedure, prescribes: "New trials in cases of felony shall be granted for the following causes and no other." Then follows nine separate and distinct grounds specified in the statute. Eight of them,—all except the ninth,—provides for matters which can be used to attack the verdict of the jury, which are extrinsic the record, and are not included therein. Even within some of these eight, there may be embraced several distinct and separate matters.

Appellant even urges strenuously that the lower court should take as confessed, unless expressly by written pleadings contested by the attorney representing the State, such extrinsic attack of the jury, unsupported by anything on earth, affidavit or otherwise, merely setting up such ground in the motion for new trial, and hold as sufficient, and require the court to grant a new trial. Such doctrine can not for one moment be sanctioned by this court. The rules of law above shown, wherein it is expressly required that any ground in a motion for new trial which is extrinsic the record, attacking the verdict of the jury, must, and shall be supported by affidavit, in order to even raise the question so as to authorize the lower court to consider it at all, is absolutely essential to the due administration of justice and the proper procedure in the trial of causes in the court below. Otherwise what a flood gate of mere "fishing" with a drag net would be turned loose, unsupported by affidavit or the record, or otherwise! Verdicts and judgments of the lower court, if such were the case, would be mere farces. The trial courts would be converted into courts for the trial of the jury and not of an accused. The time of the term of court would be taken up in hearing the twelve jurors testify in every case the details of how they arrived at their verdicts. And, in addition, it might be necessary to hear many other witnesses. The jurors would be attacked in their testimony by admissions or statements claimed to have been made out of court. Their general reputation for truth and veracity might also be attacked and a great number of witnesses sworn and testify on various phases of such "fishing" unsworn grounds for new trial. All merely on a "fishing" statement made in the motion for new trial, that they, in some unknown and unalleged way, improperly arrived at their verdict. Such contests would engender anything else but the due and orderly administration of the law, and fair and legal trials and verdicts. The practice in the lower courts has all the time been, for an accused, himself, or someone for him, who knows

the facts, to swear to any extrinsic attack of the verdict, in order to have such ground considered.

Before passing from this question we desire to state that our recollection is clear and distinct that appellant's attorney, in presenting this question in oral argument on the original submission of the case, stated to the court, in effect, that if the court below had heard the jurors, who were present testify, it would have been shown that they agreed to set down the respective time they each were in favor of assessing as a penalty against appellant, add that up and divide it by twelve and when they did so, the quotient amounted to nineteen years and two months or nineteen years and four months, we are not clear and distinct whether it was two or four months,—but one or the other. And that when they found that their experiment or agreement resulted in this time, that they, thereupon agreed,—all of them,—to fix the amount of the punishment at nineteen years even, and not nineteen years and two or four months, as the case was, the result of which, in our opinion, would be that while they experimented as to what the number of years, under the process stated, would amount to, when they ascertained that it would be nineteen years and two or four months, they thereupon abandoned their previous agreement to abide by the result, did not abide by it, but unanimously agreed to fix a less time, and did fix a less time than the quotient reached in the manner suggested. Under many decisions of this court, if that was the case, the verdict was a valid one and the court should not have set it aside even if he had heard the testimony. Pruitt v. State, 30 Texas Crim. App., 156; Cravens v. State, 55 Texas Crim. Rep., 519; Reyes v. State, 55 Texas Crim. Rep., 422; Goodman v. State, 49 Texas Crim. Rep., 185; Barton v. State, 34 Texas Crim. Rep., 613; Hill v. State, 43 Texas Crim. Rep., 583; Keith v. State, 56 S. W. Rep., 628; Leverett v. State, 3 Texas Crim. App., 213. It is needless to cite the many other cases to the same effect. There is no intimation in this court, nor was there in the lower court, that any juror hesitated about finding appellant guilty of murder in the second degree. In fact, we take it this was an absolute certainty. They at first differed merely as to the number of years they should fix as his punishment.

In discussing one of appellant's bills of exceptions, wherein the State was permitted to contradict the testimony of appellant's wife wherein she testified that deceased was the father of both of her children, in some way we incorrectly stated this: "This older child was born within a few months *prior to* the marriage of deceased and Sallie, and the question arose as to the paternity of that older child. Her conception resulting in the birth of this child, occurred months before deceased and she were married." Taking this statement as a whole, it certainly could not be misleading, did not and could not have had any effect on the decision. However, where the words *"prior to"* in the sentence quoted above, beginning with, "this older child was born within a few months *prior to* the marriage of deceased and Sallie," appear, the use of said words "prior to," was a mistake, and instead should have been

*after.* For the evidence without contradiction shows that this older child of Sallie's was born within a few months *after* her marriage to deceased, and, as stated in the latter part of the quotation above, "her conception resulting in the birth of this child occurred months *before* deceased and she were married."

There is but one other question we will discuss briefly which is very earnestly pressed by appellant; and that is his contention that the evidence was wholly insufficient to sustain a verdict for murder in the second degree, and that it excluded any other finding of guilt than manslaughter. We deem none of the other questions again presented in the motion for rehearing require any discussion.

Appellant, in his argument for rehearing, claims that this court, in the original opinion in discussing some of the evidence as to murder in the second degree, incorrectly stated the effect of some of the evidence. What he calls attention to and urges was said more in discussing manslaughter than murder in the second degree. We did not undertake to state all the evidence, nor detail it. We were merely stating some of the conclusions which the whole evidence authorized. Such mistakes in our conclusions, if there are any, are of no effect upon the conclusions reached, nor the decision of the case. Different parties in studying the record might reach different conclusions, perhaps. We were looking at it from a wholly disinterested standpoint. Appellant's attorneys naturally and properly look at it from a partisan standpoint. They urge every particle of evidence, and cull it from the whole record, that tends in any way to support their contention. We do not so look at it, nor consider it, but, as stated above, we do so wholly disinterested, not biased, or prejudiced, and with the view of seeing whether or not the jury from the whole evidence were justified in reaching the conclusion they did. We think none of these matters are of sufficient importance to restate or rediscuss them.

There can be no question, and we for no moment in the original opinion intimated, that manslaughter was not pertinently and forcibly raised by the evidence. It unquestionably was. But that by no means excludes the fact that murder in the second degree was also shown. The jury and the lower court heard all of the witnesses, saw their manner of testifying and unanimously reached the conclusion that while manslaughter was raised, appellant was not guilty of that offense, but instead, was guilty of murder in the second degree. The evidence, without reciting it, is amply sufficient to sustain this unanimous opinion of the twelve disinterested and impartial jurors and of an able and impartial trial judge.

In accordance with our statute two clear requisites are necessary to constitute manslaughter: First, "sudden passion," and, second, that that "sudden passion" must arise from an "adequate cause." And that, in order to show that an unlawful homicide is manslaughter and not at least murder in the second degree, such homicide must be "committed under the immediate influence of sudden passion," and that "sudden passion" must arise "from that adequate cause." If either of these

requisites are wanting, then the homicide can not be manslaughter, but must be murder in the second degree at least. Puryear v. State, 56 Texas Crim. Rep., 233. However "sudden" the passion, or whenever it was aroused, if the evidence does not show that it was from an "adequate cause," the homicide can not be manslaughter. And whatever the "adequate cause," if the homicide was not committed "under the immediate influence of sudden passion arising therefrom," it can not, under the statute, be manslaughter. See McKinney v. State, 8 Texas Crim. App., 626; Ex parte Jones, 31 Texas Crim. Rep., 422; Massie v. State, 30 Texas Crim. App., 64; Blackwell v. State, 29 Texas Crim. App., 200; Miller v. State, 31 Texas Crim. Rep., 609; Clore v. State, 26 Texas Crim. App., 624; Hill v. State, 11 Texas Crim. App., 456; Neyland v. State, 13 Texas Crim. App., 536; Childers v. State, 33 Texas Crim. Rep., 500; Pickens v. State, 31 Texas Crim. Rep., 554; Breedlove v. State, 26 Texas Crim. App., 445; Jordan v. State, 62 Texas Crim. Rep., 380; Oldham v. State, 63 Texas Crim. Rep., 527, 142 S. W. Rep., 13; Alexander v. State, 63 Texas Crim. Rep., 102, 138 S. W. Rep., 737.

In Ex parte Jones, 31 Texas Crim. Rep., 422, this court correctly held: "But the Code has, in cases . . . of insulting words and conduct to female relatives, extended the time in which homicide, when committed, may still be manslaughter. In such cases the law requires the homicide to occur as soon as . . . the party killing may meet the one giving the insult, after being informed thereof. If not done at such time, the injury may become evidence of malice and preparation to kill—evidence of premeditation and deliberation. . . .

"The law made a further concession to human frailty when it divided murder into two degrees. . . . Under our Code, a homicide committed in *sudden* passion, upon an inadequate cause, is murder in the second degree. . . . But it is to be observed it must be *passion that strikes;* for if the slayer broods over his injury (or insult), and deliberately forms the design to kill, and prepares for it, the presence of passion at the moment of the premeditated homicide can not change its nature. The law makes no allowance for the *passion of revenge.* While it concedes something to the instinctive, unreasoning *passion* that *blindly strikes,* it has no sympathy with the vindictive calculating spirit that deliberately premeditates and maliciously acts."

The court in this case expressly and pointedly, in effect, submitted to the jury that if the mind of the appellant was under the immediate influence of sudden passion, aroused by adequate cause, and that cause was the insult to his wife, to find him guilty only of manslaughter. "In the absence of the passion that reduces a homicide to manslaughter the unattended adequate cause may become evidence of the most cogent force showing the antecedent malice on the part of the slayer. In such case the adequate cause, unattended by the necessary passion rendering the mind incapable of cool reflection, instead of' constituting an extenuation of the crime, may and would become an aggravating circumstance attending the commission of the offense." Massie v. State, 30

Texas Crim. App., 64. To the same effect is Miller v. State, 31 Texas Crim. Rep., 609; Ex parte Sherwood, 29 Texas Crim. App., 334, and many other cases.

Appellant had known of the insulting conduct of deceased to his wife in a letter he had written to her months before this killing. These insults had been renewed just two days before the killing. In the meantime and all along during the same time, a controversy had arisen between appellant's wife and him and the deceased over the custody of the deceased's and appellant's wife's younger child. Appellant considered all these matters. He went to town in the morning of the day the killing occurred and investigated the divorce decree between the deceased and his wife as to the custody of this child, talked to parties about it. He himself knew the deceased was then in the same town; he had seen him. He deliberately, and with malice in his heart, went and bought a double-barrel shotgun of a special bore that shot with unusual force the deadly buckshot. Specially bought the largest buckshot he could find for this gun, declining smaller shot. He loaded this gun while in town with these deadly missiles. The gun was wrapped up with paper so as to conceal it, and he carried it about in this condition. Mr. Wells, a witness of the killing, a disinterested white man, standing within a few feet of the appellant at the time it occurred, said of this gun thus wrapped, "I thought it was window shades"; that appellant stood there, knowing that his intended victim was in that immediate vicinity, because he had seen him go down that way shortly before then. Standing thus in wait for his victim, he saw him approaching wholly unarmed, with his hands swinging down by his side, the deceased not discovering appellant, walked leisurely within a few feet of him. And, as the same witness, Mr. Wells, testified, "at this time Emmitt Moore was just stepping upon the sidewalk of the curb and just as he made the second step Mannie cocked the gun and said, 'There is the son-of-a-bitch now,' and fired. At the time he was shot Emmitt seemed to be walking along leisurely with his hands down, going towards Mr. Cardwell's front door. I did not hear him say a word. As the gun fired he put his coat around his neck and made towards Cardwell's store. After Mannie fired the first shot he followed Emmitt with his gun drawn and kept snapping it. Somebody came up and helped take the gun away from Mannie. Mannie followed Emmitt to Cardwell's store." And the evidence, without contradiction, further shows that as he staggered into Cardwell's store with appellant following him and snapping his gun at him, he fell dead. Many other circumstances going to show murder in the second degree might be recited. The evidence, in our opinion, was amply sufficient to sustain murder in the second degree. The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, Judge, dissents.

December 21, 1914.

DAVIDSON, JUDGE (dissenting).—At the time of the rendition of the opinion by the majority I entered my dissent. In the multiplicity of matters I overlooked filing the reasons for that dissent at an earlier date.

My brethren, through Presiding Judge Prendergast, reached the conclusion that because of one of the grounds of the motion for new trial, towit: that the verdict of the jury was reached by lot, not being supported by the affidavits of any of the jurors, it could not be considered. With that conclusion I can not agree. A verdict by lot is interdicted by article 837 of the Code of Criminal Procedure, 1911. Article 837 provides, that "New trials, in cases of felony, shall be granted for the following causes. . . . 3. Where the verdict has been decided by lot, or in any other manner than by a fair expression of opinion by the jurors." This question was raised as one of the grounds of the motion for new trial. This was not supported by the affidavit of any juror. Appellant offered eight of the jurors as witnesses to prove the verdict was reached by lot, and the jurors would have so testified, and their evidence would have brought the verdict clearly within the most rigid rule required by any decision, and would have proved beyond any question that the verdict was by lot. I do not care to repeat the evidence. The trial court refused to entertain it because no issue had been raised by the State. In other words, this ground of the motion had not been controverted by the State. This furnishes no excuse; in fact, it would rather tend to augment appellant's side of the case. It would not do to lay down the rule that because the State does not controvert an issue on motion for new trial therefore the court will not consider it. If this rule obtained, then the conclusion would be irresistible that the State can defeat any ground of the motion for new trial and set aside the statute by failure or refusal to join issue with the defendant, and that, therefore, the defendant would be denied his guarantees of a fair hearing on his legal rights. The State by remaining silent or refusing to join issues can not defeat appellant of a fair trial, or a hearing upon any issue he suggests to the court, which is favorable to his side of the case. The statement of the proposition demonstrates the error. The majority opinion, however, seems to place this upon a different rule, that is, that the ground of the motion for new trial could not be considered because it was not verified or accompanied by affidavits to the effect that the verdict was by lot. I do not so understand the law, nor do I believe it has heretofore been so understood either by the Legislature or the courts. As I understand the majority opinion, it is admitted, or practically so, that the statute does not demand accompanying affidavits, and that where the motion is silent on this question with no accompanying affidavits, the common law rule will prevail. Therefore, they reach the conclusion under the authorities they cite, that it is necessary that the affidavits accompany this ground of the motion to verify it. Another article of our Code

of Criminal Procedure provides that the provisions of such shall be liberally construed to obtain the objects and purposes declared by the Legislature in such Code. The fundamental proposition of criminal procedure is to give the accused a fair trial before an impartial jury, and this under the rules prescribed by the Legislature. Among other things, it is provided that no verdict can stand if obtained by lot or any other unfair means. This statute should be liberally construed to attain its purpose, towit: to prevent such verdict by lot or other unfair means. This is the legislative will as expressed in the statute, and should be so construed as to prevent such verdict. The statute has not provided this issue shall be raised by affidavits and not otherwise. In the nine grounds set out in the statute for which new trials may be granted the Legislature did not see proper to provide these shall be raised by affidavits as prerequisite to consideration by the court. Under subdivisions 6 and 8 of article 837 affidavits may be filed, and under subdivision 6 the motion for new trial, based on newly discovered testimony, shall be governed by the same rules as those which regulate civil suits. That subdivision is not further noticed because not in any way called in question here, nor has it any relation to this question further than it would emphasize the fact that under subdivision 3 the affidavit is not required. Subdivisions 6 and 8, supra, are rather exceptions in the statute emphasizing the fact that the other grounds of the motion for new trial are not to be verified by affidavit, that is, it is not necessary to so verify them. Subdivision 8 refers to the misconduct of the jury, and it is provided that where from the misconduct of the jury the court is of the opinion the defendant has not received a fair and impartial trial, it shall be competent to prove such misconduct by the voluntary affidavit of jurors, and the verdict may also in like manner be sustained by such affidavit. It will be noticed, however, that this subdivision does not make it a prerequisite to consideration of the question as to the misconduct of the jury that it be verified by affidavit. Article 841 of the Code of Criminal Procedure expressly provides that the State may take issue with the defendant upon the truth of the causes set forth in the motion for a new trial; and, in such case, the judge shall hear evidence, by affidavit or otherwise, and determine the issue. If the defendant files his affidavit, and there is no issue suggested by the State, the motion for new trial will be passed upon from the affidavits filed. If there are counter affidavits or a controversy about the matter, the court may then hear evidence, and this he may do either by affidavits or by other testimony. This is expressly so by the terms of legislative enactment; and it is to be noted there is a difference between subdivision 3 of article 837 and subdivision 8 of the same article. In one an affidavit may be presented, while in the other it is not required or even mentioned. Clearly, under article 841 the court shall hear evidence by affidavit or otherwise and determine the issue, because of the statute. This may be done by affidavit or by other character of testimony, either verbal or documentary. This can be introduced as any other evidence where it is relevant, necessary or

admissible. Article 837 provides that new trials in cases mentioned under the terms of the statute shall be granted for the reasons therein set out. The third subdivision is where the verdict has been had by lot, or any other manner than by the fair expression of the opinion of the jurors. This does not require or intimate that affidavits are necessary. The question can be determined either by affidavits or any other character of legitimate testimony. This court can not interpolate the statute and make it requisite under this subdivision that affidavits be filed. If they are filed they will be entertained by the court. If they are not filed, and evidence is offered to sustain or justify the ground of the motion for new trial under article 841 it will be heard. For the court to interpolate or add to this subdivision of the article the requirement of an affidavit is an assumption of legislative prerogatives. This can not be done by the express terms of article 2, section 1, of the Constitution, and not only so but such assumption would be plainly violative of legislative authority and enactment as under the terms of articles 837 and 841, supra. The rule laid down by the majority is of the harshest and strictest nature and is far removed as possible from the statutory rules. It seems to be destructive of the very thing the statutes were enacted to prescribe and to perpetuate. I do not believe it the correct doctrine that the rule of liberal construction applies only when favorable to the State or conviction or affirmance. The Legislature has not so prescribed; on the contrary, it is provided that the presumption of innocence and the reasonable doubt shall obtain, and this follows the case to its final conclusion. Our criminal procedure in all of its rules providing for trial before a jury is enacted to the end that the trial may be had under prescribed forms and requirements. That affidavits under the circumstances of this case are prerequisite to presenting the question of a vicious verdict by lot, seems to me to be assumed, outside the statute, and subversive of its plain provisions. Speaking of this question, in Stanley v. State, 16 Texas Crim. App., at page 400, Presiding Judge White said: "If the evidence had been claimed as newly discovered, then, indeed, the supporting affidavit of the proposed witness would have been requisite to the validity of the motion. (Code Crim. Proc., art. 777, subdiv. 6; Clark's Crim. Law of Texas, p. 571, note, sec. 6.) In all other respects it is only when the State has taken issue with the defendant upon the truth of the causes set forth in the motion for new trial that the judge hears evidence by affidavit or otherwise, to enable him to determine the issue. (Code Crim. Proc., art. 781.) When not controverted, and not based upon newly discovered evidence, no supporting affidavits are required. If the State took issue on and controverted the motion in this case, the record fails to show it." Now, as Judge White says, except in the instance mentioned, the supporting affidavit is not necessary. The court may hear the evidence as provided under present article 841 and determine the matter, and except in the instance mentioned Judge White says that no supporting affidavits are required. The Stanley case has been followed by this court in Keith v. State, 56 S. W. Rep., 628, Judge

Brooks delivering the opinion of the court in that case. Copying from the head-note instead from the opinion, it is thus stated: "Code Crim. Proc., article 817, subdivision 8, requires new trial in felony cases where, from misconduct of the jury, the court was of opinion that defendant had not received a fair and impartial trial, and made the voluntary affidavit of a juror competent to prove such misconduct. Article 821 authorizes taking issue on the truth of causes set forth in a motion for new trial, and provides that the judge shall hear evidence, by affidavit or otherwise, and determine the issue. Held, that the trial judge was authorized to hear testimony of the jurors adduced on controverted questions raised by the motion for new trial, and it was not necessary that the affidavits of such jurors be obtained." Richardson v. State, 28 Texas Crim. App., 216, is also cited by Judge Brooks in support of his decision as well as Stanley v. State, supra. That an affidavit may be filed can be admitted, but that it is requisite can not be maintained under subdivision 3 of article 837. The writer very seriously questions that even where newly discovered testimony is the issue that the affidavit is a sine qua non. If the party whose affidavit is desired to sustain the motion on the ground of newly discovered testimony is present, the court may examine him as well by oral testimony by having him sworn as a witness, as by affidavit. The statute does not make the affidavit requisite, as I understand it, but if it does authorize the filing of affidavits, still the affiant would be just as capable and competent a witness upon delivering his testimony orally as by affidavit. The same end would be reached, and to hold otherwise might be a very harsh and unnecessary rule. The truth of the matter is the thing to be sought. But in no event could this be applied to subdivision 3 of article 837.

Without discussing this matter at any length, I think the conclusion is inevitably correct that the trial court erred in not hearing the testimony of the eight jurors to prove the viciousness of the verdict. They would have testified that the verdict was reached by lot, and the bill of exceptions so demonstrates. By a harsh and illegal rule of construction appellant was deprived of a hearing on the grounds set up, and the evidence would overwhelmingly sustain the fact that the verdict was vicious. A citizen of Texas should not be deprived of his legal rights in this manner. If the Legislature should see proper to change this manner of procedure or practice, then we would have a different rule, but they have not done so, but expressly, as I understand it, provide the other way. It does not limit the trial court in his manner of investigating a question, except as set out in article 841, supra, and says he shall hear evidence by affidavits or otherwise. My brethren hold that he is deprived of his right to be heard at all unless affidavits are filed. I can not therefore agree with the conclusion they have reached nor the reasoning by which they reached it. I, therefore, most respectfully enter my dissent.